Michael A. Clark's Estate. Appeal by George Clark, Mary A. Moss and James Clark.

*Marriage—Second marriage after long absence of first husband—Decedent's estate.*

If a woman's lawful husband is alive and undivorced at the time of her second marriage, no matter how long he may have been absent and unheard of, the second marriage is invalid, and she is not entitled to share in the estate of her apparent second husband.

Argued Jan. 23, 1896. Appeal, No. 164, July T., 1895, by George Clark et al., from decree of O. C. Phila. Co., Oct. T., 1894, No. 250, dismissing exceptions to adjudication. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to adjudication.

The auditing judge, HANNA, P. J., found the facts to be as follows:

From the evidence presented, decedent entertained liberal views upon the subject of the connubial relation. Nor was he alone in this respect, for the two women with whom he consorted, and by each of whom he became the father of a family of children, were equally disposed to consider neither a marriage contract a prerequisite, nor an already existing contract of marriage unannulled an obstacle to cohabitation with him in the relation of husband and wife; both of whom, however, subsequently observed the formality of a religious ceremony of marriage with decedent. In the one case, her husband by a prior marriage was still living, undivorced from her; while in the other case she was a widow and had cohabited with decedent as his wife during several years prior to the ceremony of marriage with him. From all the facts proved, there is no question that at the date of decedent's death the last-mentioned claimant was his lawful wife.

It was satisfactorily shown that Michael A. Clark, the decedent, some time between 1861 and 1864, and Ann McCartney, who was the undivorced wife of Patrick McCartney, a soldier in the United States army, lived and cohabited together as husband

and wife. Ann McCartney was never divorced from her husband, and when he was discharged from the army, and returned to this city, he discovered his wife to be living with decedent. Without making any trouble over the situation of affairs, after a short stay Patrick McCartney left this city without holding any communication with his wife. He remained away during many years and never returned until within three years ago; and although he had a sister in this city he did not correspond with her during this long absence. Upon his return to this city he was curious to see his wife again. Having discovered decedent's residence, he called there, saw his wife, and recognized her. And when he addressed her she recognized him, but would hold no communication with him, and ordered him away, with threats of personal violence. He visited his sister, and after a brief stay again left the city, returning to his residence in the Soldiers' Home, in the state of Maine, where he is still an inmate. He appeared before the auditing judge, much to the surprise of his sister, who did not know of his coming to this city, she being in attendance as a witness.

Decedent and Ann McCartney lived together as husband and wife in this city about thirty years, and until his death, and became the parents of five or six children. She did not long survive decedent, as she also died about nine months subsequently.

It thus very clearly appears that the relation existing between decedent and Ann McCartney was from its inception illegal, and the defect was not remedied by an alleged subsequent marriage between them, nor that they were always supposed to be man and wife by their neighbors. Ann McCartney was not free to contract a subsequent marriage, as her husband was still living.

Any claim on her behalf that she was the lawful wife of decedent must therefore be disregarded.

It also appeared that about twenty-five years ago Michael A. Clark became acquainted with Theresa Gorman, then a girl of about sixteen or seventeen years of age, who resided with her parents in the same neighborhood wherein he resided. This was about 1870. On February 28, 1881, she became the wife of Francis J. O'Neill, but who died on October 19, 1883. In the latter part of 1884 she resided at New Centreville, Chester

county, Pa., and there Michael A. Clark visited her and began to live and cohabit with her, visiting her twice or three times a week. At the same time he maintained a residence in this city, which he occupied with Ann McCartney, who was reputed to be his wife, and his children by her. From that time until July 12, 1891, he continued to occupy this illicit connection with Mrs. O'Neill, and one child, of whom they were the parents, was born during this period.

On the date last mentioned, July 12, 1891, Michael A. Clark and Mrs. O'Neill were married in the Roman Catholic Church at Villa Nova by the rector. On August 25, 1891, a second child was born, and both the children were afterwards baptized in said church, Michael A. Clark and the mother of his children being present. At this time Michael A. Clark maintained his children and their mother at a residence occupied by them at Berwyn, Pa., at which place he visited them weekly, remaining a day, and then returning to his other residence in this city, where he also maintained his second family. His last visits to his family at Berwyn were on Sunday and Monday, August 13 and 14, 1893. He remained until August 17, when he returned to this city, was shortly thereafter taken ill, and died at his home in this city on September 1, 1893.

In view of these facts uncontradicted there is no difficulty in reaching the conclusion that Mrs. Theresa C. Clark, at the date of decedent's death, was his lawful wife, and must be now recognized as his widow and her children by him as his lawful issue.

She is also allowed her exemption of $300 in cash, in accordance with the act of 1851 and its supplements.

The following exceptions were filed to the adjudication: that the learned judge erred in finding:

1. That any claim on behalf of Ann McCartney that she was the lawful wife of the decedent must be disregarded. [1]

2. That Mrs. Theresa C. Clark at the time of the decedent's death was his lawful wife and must now be recognized as his widow, and her children by him as his lawful issue. [2]

3. In awarding to Mrs. Theresa C. Clark, widow, one-third of the fund for distribution, to the guardian of John J. Clark one-third, and to Edward A. Clark one-third. [3]

The exceptions to the adjudication were dismissed by the court.

*Errors assigned* were [1-3] in dismissing exceptions to adjudication.

*Samuel Gustine Thompson, Maxwell Stevenson* with him, for appellants.—Under the act of 1815 it will be observed that it is in the election of the innocent party to have his or her marriage dissolved and the other party to remain with the other husband or wife. This clearly means that the second marriage is not absolutely void, but that it is to be treated as a continuing valid contract, otherwise the effect of the act would be to recognize and continue an illicit relation. The law gives the returning party the right to annul his or her contract of marriage, but holds the other to the contract until finally annulled by a decree of court.

The act of 1815 where it is especially enacted that marriages within the degree of consanguinity or affinity are declared void, provides for a decree of divorce and in case of death prohibits after it any question as to validity: Thompson v. Thompson, 10 Phila. 131.

It is apparent that the act of 1705 makes the second marriage void by reason of the conviction for bigamy. A second marriage contract may be void; and it becomes so as to the parties only when it is made so either by a conviction for bigamy or so declared by a decree of divorce.

*J. Quincy Hunsicker, Joseph Edward Murray* and *William J. McAuliffe* with him, for appellee.—A man cannot have at the same time two wives, or a woman two husbands; and one who has married once cannot marry again unless such first marriage was void, or voidable, and has been duly avoided; or if valid, has been dissolved by absolute divorce or death. And if an apparent second marriage is had, it is voidable only, even where a statute provides that it may be decreed null, but no decree is necessary, and it is void ab initio. Stewart on Marriage and Divorce, sec. 76; 1 Scribner on Dower, 100.

While a well founded belief in the death of her first husband will relieve a woman marrying the second time from the pains of adultery, etc., section 6 of act of March 13, 1815, 6 Sm. Law, 288, it cannot validate her second marriage if in fact her first husband was living when it was solemnized: Thomas v. Thomas, 124 Pa. 646.

The act of April 14, 1859, P. L. 647, recognizes and declares as absolutely "null and void" a marriage contract where one of the parties thereto has a husband or wife living at the time, and extends to the courts the power to enter decrees in such cases, not of divorce, but declaring null and void the supposed or alleged marriage upon application or at the suit of the "innocent or injured party" who theretofore had no remedy by which to obtain a decree judicially determining by legal proceedings the alleged or supposed marriage to be null and void, although the same was and always has been held by the courts to be in fact null and void ab initio.

It will be observed that all of the cases cited by the learned counsel for the appellants were proceedings in divorce in the lower courts.

The parties to a marriage contract must be both able and willing to contract; and all persons in general are able to contract unless laboring under certain disabilities: Parker's App., 44 Pa. 309.

PER CURIAM, February 3, 1896:

The court below was clearly right in holding that, during the lifetime of her undivorced husband, Patrick McCartney, who survived her, Ann McCartney was incapable of contracting a valid second marriage, and hence she never was the lawful wife of the intestate Michael A. Clark. The undisputed facts, relating to that subject, bring that branch of the case directly within the ruling of this court in Thomas v. Thomas, 124 Pa. 646. It being thus settled that Ann McCartney never was the wife of the intestate, there was no error in awarding one third of the fund for distribution to his widow Theresa C. Clark and one half of the remaining two thirds to each of his children John J. Clark and Edward A. Clark.

There is nothing in any of the specifications that requires further notice. Neither of them is sustained.

Decree affirmed and appeal dismissed, with costs to be paid by appellants.