## Beck *v.* Ashton et al., Appellants.

Argued November 16, 1936.

Before KELLER, P. J., CUN-NINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*George H. Detweiler,* for appellants.

*Raymond E. Larson,* for appellee.

Opinion by Baldrige, J., December 11, 1936:

In this workmen's compensation case, the controlling question presented is whether John Beck met with accidental death in the course of his employment. The compensation authorities found that he did and made an award. On appeal, the court of common pleas affirmed the award. In our judgment, this action was correct.

Beck was the defendant's sales manager and had general supervision of her milk plant at Oakmont, receiving commissions, with a drawing salary of $55 per week. He had no regular time to report on or off duty; his working hours were largely determined by himself, but he was subject to call at any time of the day or night. It was testified that he received at his home both day and night telephone messages relating to his work.

In the discharge of his duties, which included taking customers to the plant or to the farm maintained by the defendant, it was necessary to use an automobile. It had been acquired by exchanging his old machine, for which a credit of $175 was allowed on the purchase price, and the remainder was paid by the defendant. The title to this car was in the name of the deceased and was driven by him on occasions for his personal purposes, but at times it was used by other employees in connection with their work. The employer furnished the gas, oil, tires, and paid repair bills.

On the morning of July 12, 1934, Mrs. Beck heard her husband make a telephone call. Ansert, the night man at the plant, testified that the deceased called on the 'phone about 6 o'clock, as was his custom if he did not come to work at an earlier hour, and told him his car was out of order, that Tom Keefe, another employee, was the only one who could fix it and to send him over. Deceased had told Keefe the night before that his automobile had a defective rotor in the dis-

tributor. The appellants contend that after the deceased telephoned the plant he returned to bed; but this is not borne out by the testimony of his wife. The telephone conversation evidently occurred after he had been to the garage and found he was unable to start his car. After talking to Ansert, he returned to the garage and resumed his efforts to get the car running. When Keefe reported for work he was told to go to Beck's garage and fix the car or bring Beck to the plant. George Beck, a brother of the deceased and an employee of the defendant, went along to obtain instructions from the deceased for the day's work. When they arrived at the garage they found the door open about 3 inches and the body of the deceased lying beside the car. The hood of the car was up, the motor was not running but the ignition switch was on, and tools and a flashlight were on the floor. The body was removed to the hospital where the deceased was pronounced dead as a result of carbon monoxide gas poisoning.

It can be fairly assumed that the employer, in paying the major part of the purchase price of the car and entirely maintaining it, recognized that it was an instrumentality required to transport the deceased to and from work at any hour of the day or night and to other places where he went on his employer's business. It was to the interest of both the employer and the deceased that he have this convenient means of travel and that it be in proper repair.

We do not question the general rule that, in the absence of special circumstances, preparing for, and going to or returning from work, do not constitute a furtherance of the employer's business: *Palko v. Taylor-McCoy C. & C. Co.*, 289 Pa. 401, 137 A. 625; *Krapf v. Arthur*, 95 Pa. Superior Ct. 468; *Kerwin v. Susquehanna Coal Co.*, 112 Pa. Superior Ct. 594, 172 A. 24. This rule, however, has no application to the present

circumstances, as the deceased not only transacted business at his home for his employer, but, as we have stated, transportation was also furnished to and from his home at the employer's expense, and at the time of the accident, deceased was actually doing something in the course of his employment, viz., trying to put in immediate use this car for business purposes.

In *Krapf v. Arthur,* supra, the claimant, employed as a bookkeeper and travelling salesman, went on a two-day selling trip and returned home, a town a few miles distant from his place of business, on the second night. The following morning he boarded a trolley car to report at the office, and was injured in a collision. We held that in such circumstances he was at the time of the accident engaged in the course of his employment.

In *Green v. Hiestand,* 103 Pa. Superior Ct. 515, 157 A. 44, the employee, who received a special allowance for the use of his car, was engaged in discharging his employer's business. When his car required some adjustment, he drove it into his garage to fix it, after which he intended to continue his employer's work. His body was later found beside the car, with the hood raised and tools scattered around. Admittedly, his death, as here, was accidental and was the result of inhaling carbon monoxide gas. The award was sustained.

Our decisions uniformly hold that if transportation to and from place of employment is supplied, the employer is responsible to the employee or his dependents for compensation where accidental death is caused by injury sustained while being transported by the employer.

In *Knorr v. Central R. R. of N. J.,* 268 Pa. 172, 110 A. 797, the deceased lived some miles distant from his work and the company furnished him a pass over its railroad and a plane train to ride to and from work.

312

When the day's duties were ended, and after attending to some personal business, he proceeded by way of the plane train to reach his home and was accidentally killed. The Supreme Court, speaking through the present Chief Justice, held that the facilities furnished by the company, while a matter of convenience to the employee, were useful and beneficial to the employer; that "his transportation may be regarded as a privilege incidental to the contract of service, if it is not a part of his compensation" (p. 175) ; and that the fact that he stopped for a short time to transact business in the town did not break the continuity of his general employment, as his work was but suspended temporarily and was resumed immediately when he boarded the plane train.

In the recent case of *Bock v. Reading,* 120 Pa. Superior Ct. 468, 182 A. 732, the claimant was foreman of the garbage plant of the city of Reading. He was found seriously injured in an automobile, supplied and maintained by the city of Reading, on a public road between the city and his home. The city impliedly agreed to let him have the machine so that he could go back and forth from his home because of the lack of transportation. We held there that if the transportation or the means of transportation furnished the employee by the employer is expressly or impliedly part of the agreement of employment, and for the interest of the employer, as well as the employee, the employer is liable for injuries sustained by the employee while being transported, or while using the means of transportation on his way home from work.

In the case at bar, while the automobile was not transporting the deceased at the time of the accident, it was being used in the sense that he was working with it so that it might be made available for his transportation, which was to his employer's advantage.

A careful consideration of the record convinces us

that the evidence clearly established that the deceased was accidentally killed in the course of his employment.

Judgment affirmed.