## Malinoski v. Kessler et al. (Farmers Mutual Cas. Ins. Co., Ap.)

Argued March 3, 1937.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*William K. Goldstein,* for appellant.

*Ralph G. Mastriani,* with him *A. C. F. Kenowski,* for appellee.

Opinion by Rhodes, J., April 15, 1937:

The question presented in this workmen's compensation case is whether Joseph Malinoski was accidentally killed while in the course of his employment.

The referee concluded that deceased "was fatally injured on July 16, 1934, while in the course of his employment for defendant." He awarded compensation to his widow and her children. On appeal by the insurance carrier, the workmen's compensation board affirmed the referee. An appeal was taken to the court of common pleas, which affirmed the board. This appeal followed.

Joseph Malinoski was employed by defendant, F. D.

Kessler, as a laborer, on April 12, 1934, and so continued until July 16, 1934. He resided on West Locust Street, Scranton, Pa. On the 12th day of April, 1934, Malinoski reported to the defendant for work. He went to the Hagen Coal Company garage on Moosic Street, Scranton, where defendant stored his trucks and supplies, and which defendant used for various other purposes. He was given employment by J. M. Long, who represented the defendant, and was assigned to work on a road project about two and a half miles from the city of Scranton. Each morning during the period of his employment he reported at the garage, about six-thirty, and was transported, together with other laborers, to work. On July 16, 1934, deceased reported as usual at the garage of defendant. Long drove defendant's truck that morning, and while proceeding over Harrison Avenue bridge, in the city of Scranton, Malinoski's hat blew off, and as he attempted to recover it he fell from the truck and was run over. He was immediately taken to the hospital, and died from the injuries which he sustained.

Thomas Maguire, an employee of the defendant, testified that when he was employed by the defendant he was told by Long "to ride the trucks, that a part of the job"; that he and the deceased rode every morning; that he was to wait for the trucks at the garage; and that they were brought back to the garage by truck at the conclusion of each day's work.

Oscar Murphy, who was employed in the same capacity as the deceased, testified that at the time of his employment he was told by Long "to report to the garage each morning and get on the truck each morning and go to work"; that he was to wait for the truck each morning and evening.

Both witnesses testified that they were on the truck the morning Malinoski was killed, and that they were all told to get on by Long. They both testified that when

the truck arrived at the project after seven o'clock they were allowed their compensation beginning at seven o'clock. The witnesses were laborers, and were hired in the same manner as the deceased.

J. M. Long and Benton Reichenbach, the foreman, testified for the defendant. Long testified that he made no such arrangement for transportation as the two witnesses for claimant testified. He admitted, however, that the men habitually rode on the truck, and that if the employees came up by truck and arrived late on that account he started their time at seven o'clock. He stated that the terms of the contract of employment were the same for deceased, Maguire, and Murphy. Reichenbach testified that he had nothing to do with the hiring of the men, and that he knew nothing of any transportation arrangements. He stated that he had seen the two witnesses and the deceased ride on the trucks mostly when going off the job in the evening.

The referee found as a fact "that this ride to work on a truck was part of his [deceased's] employment." The controlling question, therefore, involved on this appeal is whether there is legally competent evidence to sustain this finding of fact which was also affirmed by the board. If deceased was to be transported by defendant as a part of the contract of employment, then the conclusion that deceased was accidentally killed while in the course of his employment properly follows.

When an injury occurs off the premises, to be compensable, the employee must be actively engaged in his master's business (*Palko v. Taylor-McCoy Coal & Coke Co. et al.*, 289 Pa. 401, 137 A. 625; *Cronin v. American Oil Co.*, 298 Pa. 336, 148 A. 476); and the rule is that going to or returning home from work is not considered as furthering the master's business unless there is a special contract covering such incidents. "The exceptions to this rule are where the contract of employment

embraces going to and returning from work: *Dunn v. Trego,* 279 Pa. 518 [124 A. 174]; *Logan v. Pot Ridge Coal Co.,* 79 Pa. Superior Ct. 421; *Knorr v. Central R. R. of N. J.,* 268 Pa. 172 [110 A. 797]": *Morucci v. Susquehanna Collieries Co.,* 297 Pa. 508, at page 512, 147 A. 533, at page 535. See, also, *Garratt v. McCrady Construction Co. et al.,* 114 Pa. Superior Ct. 579, 174 A. 808; *Kerwin v. Susquehanna Collieries Co.,* 112 Pa. Superior Ct. 594, 172 A. 24. In *Beck v. Ashton et al.,* 124 Pa. Superior Ct. 307, at page 311, 188 A. 368, at page 369, in an opinion by Judge BALDRIGE, this court stated: "Our decisions uniformly hold that if transportation to and from place of employment is supplied, the employer is responsible to the employee or his dependents for compensation where accidental death is caused by injury sustained while being transported by the employer."

The essential finding of fact of the referee and board, necessary to sustain the ultimate conclusion upon which the award of compensation rests, namely, that the deceased met his death by accident during the course of his employment with defendant, was not established by direct evidence.

It is therefore necessary to examine the facts and circumstances in evidence and to ascertain whether or not they are sufficient and such that the fact-finding bodies may infer legitimately that deceased's contract of employment included transportation to and from the project on which he was working for defendant. The witness Long testified that the terms of the contract of employment were the same for the deceased and the witnesses Maguire and Murphy. The latter testified, in effect, that their contracts of employment included transportation to and from the road job; that they were to be transported from defendant's garage by defendant's trucks in the morning, and brought back to the same place in the same manner at the conclusion of

each day's work. The testimony shows that the deceased and the two witnesses, who were employees of the defendant, were, each morning and evening, transported to and from work. The road project upon which deceased worked was about two and one-half miles up the mountain outside the city of Scranton. The project itself was about two miles in length, and the testimony also shows that the employees were transported by truck from place to place on the project after they had there arrived. It also appears that when the employees, including deceased, who were transported, arrived late on the job, by virtue of the fact that the truck did not reach the project before seven o'clock, such employees were given their time beginning at seven o'clock.

The findings of the compensation authorities may be made from direct proof, or by inference from other proved facts.

Although there is not any direct evidence on behalf of claimant as to the exact terms of the contract of hiring or employment of the deceased, and although defendant's witness Long denied that the employment included transportation, nevertheless we believe that the compensation authorities were justified in inferring that deceased's contract of employment did provide for transportation to and from defendant's project. It is not denied that deceased was regularly transported to and from the project where he worked; and he was employed on the same terms as the witnesses who testified that their employment included transportation. The compensation authorities were warranted in believing these witnesses. Transportation was actually furnished to them, as well as to the deceased; and the finding of the compensation authorities that deceased's contract likewise included transportation was a proper, reasonable, and legitimate inference from all the facts and circumstances in evidence. See *Watkins v. Prudential Ins. Co.*, 315 Pa. 497, 173 A. 644.

528

Appellant relies chiefly on the case of *Morucci v. Susquehanna Collieries Co.,* supra. That case held that the employee was a mere licensee or trespasser, and that the relation of master and servant had ceased to exist when the employee had ceased to work and was returning to his home on the loaded coal car of the employer. His presence there was not the result of a contract, nor was it required by the nature of his employment. In the case at bar, the presence of the deceased on defendant's truck was properly found to be in accordance with his contract of employment providing for transportation to and from work. In the Morucci case it was merely the custom of the employees to use the facilities of their employer to return home, and it was not considered as being in the course of employment. In the instant case the deceased had a contractual right to be transported on the truck of defendant to and from his work during his employment, and the injury happening under such circumstances brought the deceased within the Workmen's Compensation Act, 77 PS §1 et seq.

Judgment is affirmed.