## Hockenberry v. State Workmen's Insurance Fund et al., Appellants.

Argued September 28, 1938. Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*John T. J. Brennan,* with him *S. H. Torchia* and *Guy K. Bard,* Attorney General, for appellants.

*Harry L. Siegel,* for appellee.

OPINION BY RHODES, J., November 21, 1938:

The only question involved in this workmen's compensation case is whether, at the time he was fatally injured, claimant's husband was in the course of his employment with defendant employer.

After three hearings the referee disallowed compensation, and claimant appealed to the Workmen's Compensation Board, which remanded the case for the taking of additional testimony. Pursuant to that order the referee held two more hearings, and republished his original findings of fact, conclusions of law, and disallowed compensation. Upon appeal the Workmen's Compensation Board reversed the referee, and made an award. The action of the board was affirmed by the court below, and defendants have appealed from the judgment entered.

Deceased was employed by the Department of Highways of the Commonwealth of Pennsylvania, and died as the result of injuries sustained while alighting from a truck, owned by one Filson and under contract with that department. The accident occurred on August 18, 1933, between 5 and 5:30 P.M., at the corner of Valley and Third Streets, in Lewistown, Pa., to which place deceased was returning from a point about six miles

distant where he had worked that day. His widow, the claimant, remarried on September 6, 1934, her present husband being one Frank Hockenberry.

The Workmen's Compensation Board was of the opinion that there was competent evidence to show that deceased's contract of employment included transportation between his home and the various places throughout Mifflin County to which he was assigned. The board also referred to evidence that deceased was still charged with the duty of delivering his time card and some papers given to him by a foreman to the office or garage of the highway department in Lewistown at the time he was injured. Although the board made no finding on this point, defendant's own evidence would have warranted, in our opinion, a finding that deceased had been directed to return to the department's office or garage in Lewistown that evening. The court below stated: "With [the] testimony and evidence before us we cannot say as a matter of law that there was not sufficient competent evidence in the record, if believed by the Board, to sustain its substituted findings of fact ...... and its conclusion of law that the deceased was injured in the course of his employment and entitled to compensation." Our jurisdiction is limited to determining whether there is competent evidence to sustain the findings on which the award is based. We may not weigh the evidence; that is the duty of the compensation authorities, and their findings may be made from direct proof or by inference from other proved facts. *Harmon v. Knoll,* 129 Pa. Superior Ct. 390, 195 A. 448. As the fact-finding body has found in her favor, we must review the evidence in the light most favorable to claimant. *Healey v. Hudson Coal Co.,* 130 Pa. Superior Ct. 462, 198 A. 684. Whether deceased, on the state of facts found, was in the course of his employment when fatally injured, within the meaning of the Workmen's Compensation Act of June 2, 1915, P. L. 736, Art 3, § 301,

77 PS § 411, is a question of law. *McDermott v. Sun Indemnity Co. of New York,* 131 Pa. Superior Ct. 60, 198 A. 499. After a careful review of the record, we are not inclined to disturb the judgment of the court below.

Claimant testified that deceased had worked for the highway department for two years as an equipment operator. Concerning the arrangement by which he was to be transported to and from work, she said: "Q. Where was that arrangement made? A. In our kitchen. Q. In your home? A. Yes. Q. Where? A. In Maitland. Q. Who came to your home to employ your husband? A. Mr. Goodhart and Mr. Boynton. ...... Q. Give us in your own language the conversation had there in your presence between your husband and Mr. Goodhart and Mr. Boynton? A. Whenever said about going back to work, he said, 'How will I get back and forth,' and they said, 'all right we will see that you get back and forward.' Q. And in accordance with the terms of that employment was your husband taken to work by State employees and was he brought back from work by them? A. Yes. ...... Q. Now, this job that you overheard this agreement, you overheard this agreement for a specific job? A. In our kitchen and they said they would see that he got back and forth for work. They said if away from Lewistown they would see he got back and forth, and they did. Q. So you don't know the length of time he was employed on that job or when it ceased? A. Just the one job, no. Q. About which this conversation took place? A. Was not any one job. If to work out of Lewistown no way to get to it. They worked all over different parts of the County. ...... Q. Mrs. Hockenberry, did your husband from that time on work for the Highway Department up until the time of his death? A. Yes. Q. Did that conversation as you heard it refer to any particular one? A. The employment with the Highway Department. ...... Q. Mrs. Singley, was there anything said as to how they were to get to and

from? A. He was to report from the garage and taken from the garage. He went to the garage part of the time, and part of the time they came to the house and brought him back to the house. Q. In the Highway truck? A. Yes."

It seems that this agreement was made in the fall of 1931, or the early part of 1932. She testified that, pursuant to that agreement, deceased was always taken to and from his work in the various parts of the county in state passenger cars or state trucks.

F. E. Goodhart was maintenance superintendent in the state highway department in Mifflin County from July 6, 1931, to July 6, 1933. He denied making the arrangement testified to by claimant, but later admitted that it was possible that he had visited her home and had no recollection of it. He admitted also that it was to the interest of the highway department that these employees be on the job regularly and on time.

P. C. Boynton testified that in 1931 he was garage foreman in the highway department, and his testimony was to the same general effect as that of Goodhart. He would not deny the truth of claimant's testimony concerning the arrangement for transportation, but stated that he had no recollection of it. He admitted that equipment operators were in demand and needed by the state, and that the only way employees could reach the job where deceased had been working was by riding on the trucks, unless they had a private automobile. This witness was also asked: "Q. Did Mr. Singley have to bring his time card to the State garage at the end of the day's work? A. His time card should be in the garage at the end of the day's work in the evening. Q. And he had to bring it there? A. There are times some of them don't get them in until the next morning. Q. But the definite regulations and instructions were that these employees bring their time cards to the State garage at the end of the day's work? A. They

can send them in with the Timekeeper or with the truck that was going in or bring them in themselves. Q. But they had to have them there? A. Yes. Q. That was one of the terms of the employment? A. They had to have their time cards there in the evening." That the trucks were used extensively for the transportation of workers is shown by the testimony of William Young, driver of the truck involved in this accident, who testified: "Q. How many men worked on that job there? A. A good many. Q. Good many from Lewistown? A. Yes, there was four trucks." The inference is clear that he estimated the number of men on the job by the number of trucks required to carry them.

Claimant produced no witnesses except herself to prove the making of the agreement in question, but several witnesses testified to circumstances which tended to corroborate the fact that it had been made. The father-in-law of deceased, who worked with him, testified that when he went for a job he asked, "How are we going to get back and forth?" The foreman on the job said, "Get on the truck." These were trucks owned or leased by the state. He also said that he and deceased went to the state highway garage and were transported daily to and from one job on which both worked for four weeks. Several neighbors of deceased testified that frequently they had seen state automobiles and trucks call for the deceased and bring him home.

Victor Filson, owner of the truck involved in the accident, testified: "I had given instructions this way [to his drivers]—don't haul any passengers unless a foreman on the job asks you to." The driver of the truck, William Young, testified that he had no instructions not to haul any one in from the job. Concerning how deceased came to board his truck, Young testified: "Q. Mr. Young, do you recall any conversation or request by Mr. Singley—what did he say when he climbed on your truck? A. I was just on my way home, on the

job yet, he was backing the roller off the road and he hold up his hand if I be going in, and he run and got his dinner bucket, and a fellow asked him to bring some papers, he was his boss, he said were time sheets, and he slid in beside me and he came in. That is all I seen. We talked coming in, but I could not say all about it. ...... Q. You did not ask him to come with you? A. No, sir. Q. Did he ask you to ride with you? A. No. He hold up his hand to wait a minute and I said all right. I did not say nothing. He pulled the roller off the road. If I am not mistaken another man covered it up. Q. Were any other men on the truck? A. No, not on mine. ...... Q. He did not ask to go along with you? A. No. He hold up his hand said I will be going in in a minute and stopped me." As the board points out, it is significant that the witness did not ask deceased to ride with him, nor did deceased ask the witness for permission. All that deceased did was to hold up his hand, stop the truck, and say that he would be "going in in a minute."

The referee disallowed compensation, and on appeal the board remanded the record to the referee "for the purpose of adducing testimony as to whether or not the decedent had complied with the terms of his employment by having his time card in the department garage in Lewistown the evening of August 18, 1933, before he sustained his fatal injury and as well any other testimony that has to do with [this] question of fact, the Referee to dispose of the case as soon as possible."

Since the board made no finding relating to the time card, based upon the testimony taken after the case was remanded to the referee, there is no need to discuss it here. The referee again disallowed compensation, republishing his original findings of fact and conclusions of law, and upon appeal to the board, findings of fact Nos. 7 and 8, and conclusion of law No. 2 were set aside, and the following findings of fact and conclusion of law substituted therefor:

"7. The truck upon which the decedent was riding from his work to his home on August 18, 1933, was rented by the Pennsylvania Department of Highways.

"The contract of employment between the decedent and the defendant provided transportation to said decedent to and from his work.

"8. That the decedent at the time of his accidental injury on August 18, 1933, was in the course of his employment with the defendant."

"2. That the decedent at the time of his accidental injury on August 18, 1933, which resulted in his death on August 24, 1933, was in the course of his employment with the defendant. The claimant, therefore, is entitled to compensation under the Workmen's Compensation Act of 1915, as amended."

Like the court below, we are of the opinion that there was competent evidence, much of which we have quoted, to support the findings of the board, and that the law has been properly applied to the established facts. The record shows that transportation was embraced in deceased's contract of employment, and such transportation was actually furnished. In *Malinoski v. Kessler et al.,* 126 Pa. Superior Ct. 522, at page 525, 191 A. 177, at page 178, we said: "When an injury occurs off the premises, to be compensable, the employee must be actively engaged in his master's business (*Palko v. Taylor-McCoy Coal & Coke Co. et al.,* 289 Pa. 401, 137 A. 625; *Cronin v. American Oil Co.,* 298 Pa. 336, 148 A. 476); and the rule is that going to or returning home from work is not considered as furthering the master's business unless there is a special contract covering such incidents. 'The exceptions to this rule are where the contract of employment embraces going to and returning from work: [Cases cited.]' In *Beck v. Ashton et al.,* 124 Pa. Superior Ct. 307, at page 311, 188 A. 368, at page 369, in an opinion by Judge BALDRIGE, this court stated: 'Our decisions uniformly hold that if transportation to and from place of employment is supplied,

the employer is responsible to the employee or his dependents for compensation where accidental death is caused by injury sustained while being transported by the employer.' "

Judgment is affirmed.