Fiedler *v.* National Tube Company, Appellant.

Argued April 15, 1947. Before Rhodes, P. J., Hirt, Reno, Dithrich, Ross and Arnold, JJ.

*Sherman T. Rock,* with him *P. K. Motheral* and
*Reed, Smith, Shaw & McClay,* for appellant.

*Jason Richardson,* with him *William L. Sixsmith,* for
appellee.

OPINION BY ROSS, J., July 17, 1947:

In this workmen's compensation case, John W. Fiedler was accidentally killed on January 5, 1944, while
in the course of his employment with the defendant
company and shortly thereafter Mary Fiedler, as dependent widow, and the employer entered into an open
agreement providing for 300 weeks' compensation and
funeral expenses.

On July 3, 1944, the employer filed a petition to set
aside the agreement averring that "Said agreement was
entered into under a mistake of fact, employer believing
that Mary Fiedler was the lawful widow of John W.
Fiedler, which she was not, having entered into an invalid marriage with him, prior to his divorce from his
first wife." After an answer was filed and hearing held,
the referee after finding that the decedent was granted
a divorce from his first wife on October 5, 1942 and that
"subsequent thereto, entered into a common law marriage with the claimant, Mary Fiedler" and "the claimant was the common law wife of the decedent on
January 5, 1944", concluded, as a matter of law, that the
defendant had failed to meet the burden of proof of
showing that the agreement was entered into under a
mistake of fact, and, in an order, dismissed the petition
to set aside. The referee's findings of fact, conclusion
of law and order were affirmed by the board, the employer's appeal to the County Court of Allegheny County
was dismissed, and the employer has appealed to this
court.

The only question involved is whether there was a
valid common law marriage entered into by the claimant and the deceased employee, and this is a mixed

question of fact and law. *Baker v. Mitchell et al.,* 143 Pa. Superior Ct. 50, 17 A. 2d 738.

The claimant and the decedent first met in February 1940. At that time he told her that he had previously been married but had secured a divorce from his first wife in Spokane, Wash. In October 1940 the decedent and the claimant went to Maryland and were cermonially married, and thereafter resided together as husband and wife and were so known until June 1942, when the decedent's first wife appeared and told him that the divorce had not been granted in Washington. Thereupon the claimant and decedent separated and did not resume cohabitation until November 1942, after the decedent had secured a divorce in Allegheny County from his first wife on October 5, 1942. It is not disputed that after November 1942 the claimant and the decedent cohabited until the latter's death on January 5, 1944, and their reputation as husband and wife during that time was clearly established by the evidence.

Even though the parties acted in good faith, the Maryland marriage in 1940 was invalid. This court, in *Sharpe v. Federal Window & Office Cleaning Co.,* 144 Pa. Superior Ct. 231, 19 A. 2d 509, 514, speaking through the late President Judge KELLER, stated: "one who has married once cannot lawfully marry again unless the first marriage has been dissolved by absolute divorce or by death. And if a second marriage is entered into it is void ab initio. Clark's Estate, 173 Pa. 451, 34 A. 68. . . . The marriage of a man or woman, where one of them has by a prior marriage a husband or wife who is then living and undivorced, is not merely voidable, but void, whether it be meretricious or founded *in mistake.* . . ." (Italics supplied). The claimant, however, contends that the parties entered into a common law marriage in November 1942.

Common law marriages are valid in Pennsylvania and neither the method of contracting them nor their validity has been changed by statute. *Buradus v. General Cement Products Co. et al.,* 159 Pa. Superior Ct. 501,

48 A. 2d 883, affirmed 356 Pa. 349, 52 A. 2d 205. Marriage in Pennsylvania is a civil contract and does not require any particular form of solemnization before officers of church or state, but is entered into by words in the present tense, uttered with a view and for the purpose of establishing the relation of husband and wife. *Balanti v. Stineman Coal & Coke Co.,* 131 Pa. Superior Ct. 344, 200 A. 236; *Wagner v. Wagner,* 152 Pa. Superior Ct. 4, 30 A. 2d 659. The contract of marriage may be proved like other contracts; proof in a specified way or by a designated quantum is not required. *McGrath's Estate,* 319 Pa. 309, 179 A. 599. Reputation and cohabitation are not marriage. They are merely circumstances from which a marriage may be presumed. *Pierce v. Pierce,* 355 Pa. 175, 49 A. 2d 346. Where the one who asserts a common law marriage does not rest her case on reputation and cohabitation but attempts to prove the marriage by evidence of what occurred at the time of the alleged contract of marriage, presumption of marriage arising from reputation and cohabitation may give way to positive proof that no contract was made (*Caddy v. Firemen's Relief Assn.,* 129 Pa. Superior Ct. 493, 196 A. 590), although in such case evidence of cohabitation and reputation may be received and considered in corroboration of testimony that a marriage contract was in fact entered into. *Com. ex rel. Kolish v. Kolish,* 154 Pa. Superior Ct. 591, 36 A. 2d 857.

The claimant testified that in November 1942 the decedent called on the claimant at the home of her sister and in the presence of the sister and the latter's huband said, ". . . he wanted me for his wife and I said I wanted him for my husband, and we went to live together in November in McKeesport"; and on cross-examination, in reply to the question ". . . Now, what was your language—what did he say to you and what did you say to him?" answered, "Well, he said that he didn't think it was necessary to go through another ceremony and would I, at that time, take an apartment and go and live with him as man and wife—we should go and live

together as man and wife, and I said, all right, I would." Claimant's brother-in-law testified, in response to the question on cross-examination, "Just what were John Fiedler's words with reference to his desire to have Mrs. Fiedler as his wife?" A. "Exactly as I have stated. He said that 'I married you before, wanted you for my wife before, and you're still my wife. This trouble arose, which I thought was all settled before, and now that it's all over, I still want you for my wife', and wanted her to go live with him."

The appellant contends that this testimony shows that the parties resumed cohabitation in reliance upon the ceremonial marriage in Maryland and not as the result of a new marriage contract. This contention, however, is unsound, in view of the testimony that the parties separated immediately after learning that the decedent had not been divorced in Washington and resumed cohabitation, not in October when the Pennsylvania divorce was granted, but the "next day" after the conversation in the sister's home. It seems clear that the parties resumed cohabitation under a *new* arrangement and with the intention to create a *new* status: either a meretricious relationship or a common law marriage and the record negatives any theory of a meretricious relationship.

The form of the words used is not controlling and the intention of the parties may not be disregarded. As the fact-finding body has found in her favor, we must review the evidence in the light most favorable to the claimant (*Hockenberry v. State Workmen's Insurance Fund,* 133 Pa. Superior Ct. 249, 2. A. 2d 536), and she is to be given the benefit of inferences reasonably deducible therefrom. *Paulin v. Williams & Co., Inc., et al.,* 122 Pa. Superior Ct. 462, 186 A. 415. It is our opinion that the words used by the parties to create their new status expressed a present intent to create an immediate relationship of husband and wife and that they entered into a valid common law marriage. Cf. *Brown v. Nolen,* 298 Pa. 384, 148 A. 498.

Order affirmed.