## Mihalik *v.* Lattimer Coal Corporation et al., Appellants.

Argued March 1, 1948. Before RHODES, P. J., ROSS, ARNOLD and FINE, JJ. (HIRT, RENO and DITHRICH, JJ., absent).

*Nathan Hyman,* with him *Frank L. Pinola,* for appellants.

*Roger J. Dever,* for appellee.

OPINION BY ROSS, J., April 16, 1948:

This is an appeal by the employer from an award of total disability under the Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, 77 PS 1201 et seq. The referee, affirmed by the board, found that the claimant was totally disabled as the result of anthraco-silicosis (miner's asthma), contracted in the course of his employment with the defendant employer, and made an award of total disability. After the employer's exceptions were dismissed by the court below, it took this appeal.

It is not disputed that the claimant became totally disabled on December 12, 1945 as a result of anthraco-silicosis and that the appellant was his last employer. The referee, affirmed by the board, found, inter alia, that the claimant had an aggregate employment of at least four years in the Commonwealth of Pennsylvania during a period of eight years next preceding the date of disability in an occupation having an anthraco-silicosis hazard, as required by section 301(d) of the Act. This finding will sustain the conclusions of law and the award, and, consequently, the only question before us is whether it is supported by sufficient competent evidence.

For about thirty years prior to 1939 the claimant, Frank Mihalik, worked in the defendant's mine. On February 9, 1939, he was assigned to work outside the mine because "I was blocked up with miner's asthma",

and continued in this latter employment until his total disability developed. For some period of time prior to December 12, 1945, the claimant was employed by the defendant in a place on the colliery grounds known as "the dump", where run of the mine coal of the defendant was dumped from gondola cars for the purpose of being conveyed to the breaker, where it was prepared for shipment.

It is not disputed that from December 12, 1937 to February 9, 1939—within the eight-year period—the claimant was exposed to the anthraco-silicosis hazard within the mine. However, the defendant contends that while working on the dump, the claimant was working "outside" and, therefore, not exposed to the hazard; and further, that it was not shown that he had worked long enough on the dump to make up the required four years. The compensation authorities having found in his favor, we must review the evidence in the light most favorable to the claimant. *Hockenberry v. State Workmen's Insurance Fund*, 133 Pa. Superior Ct. 249, 2 A. 2d 536.

A witness for the defendant, Delahunty, testified as follows: "Q. Let's understand the question. The place where these cars carry run of the mine coal to what you call 'the dump', that is outdoors, is it not? A. I don't know what you mean. Q. It is not in a building? It is in a building, yes. Q. Where is the building? A. Right over the car. . . . Q. How big is this building? A. It is about 60 feet long and about 40 feet wide. Q. And it is open at both ends for the car to come in and go out? A. It is solid through to the peak, where the roof is made this way (illustrating). It is solid from there down. In other words, there is about 14 feet open. Q. Then would you call that a shed? A. Yes, certainly." A witness for the claimant, Matz, testified relative to the dump as follows: "Q. Just describe to the Referee the place or position he worked in, outside, the last work he was doing. A. On the outside, our coal comes in from Humbolt, Lattimer Mines and strippings. They dump this

coal on the drag line, take it to the breaker. On the outside when the cars come in, it is very dry. You can't see the next man to you. Q. Why? A. Too much dust. Q. Claimant working under those conditions? A. Yes. . . . Q. Were the conditions always as you descibed? A. Always." Delahunty refered to the dust that arose when the coal was dumped as a "fog of dust" and testified that about 25 cars were dumped a day, each taking "10 to 12 minutes". It is in evidence that the coal is "crushed" when it is dumped, and that after it is dumped it is taken to "the top of the breaker, where it is to be separated of rock and the coal is to be cleaned". It seems clear from this testimony that the claimant was exposed to anthraco-silicosis hazard during his employment on the dump, as found by the compensation authorities.

According to the testimony, the claimant worked on the dump at least three years immediately preceding his total disability, and this period, added to the period from December 12, 1937 to February 9, 1939, would meet the claimant's burden of establishing "an aggregate employment of at least four years", as required by section 301(d) of the Act, supra. Referring to the claimant, Matz, in response to the question "How long was he working at this last job he had?" answered, "He must have been working there three or four years"; and Delahunty, in response to the question "Up until the time he quit, was he still doing a little bit of everything?" answered, "For the last three years he was working on this dump".

In an attempt to bring itself within our ruling in *Bingaman v. Baldwin Locomotive Works, Inc.,* 159 Pa. Superior Ct. 29, 46 A. 2d 512, the appellant contends that Matz and Delahunty "are speaking of contractual period rather than actual working time in the hazard". There is nothing in the record to justify such interpretation of the witnesses' testimony. The claimant testified that after he started to work outside he did not work for

"weeks at a time" during the cold weather "in 1939, 1940 and 1941", but these periods are not material to a disposition of this case as they are not included in the three year period preceding the claimant's total disability on December 12, 1945. For us to infer that Matz and Delahunty meant "contractual period rather than actual working time" would not only be illogical and unwarranted but would do violence to the principle of *Hockenberry v. State Workmen's Insurance Fund*, 133 Pa. Superior Ct. 249, 2 A. 2d 536, supra.

There is sufficient competent evidence in the record before us to sustain the findings of the compensation authorities and consequently they are conclusive.

Judgment affirmed.