## Neiderhiser Estate

*William J. Ober,* for petitioner.
*Richmond H. Ferguson,* for administratrix.

KEIM, *J.,* February 28, 1977—This matter is before the court on a petition requesting the removal of Naomi Neiderhiser as Administratrix of the Estate of Robert R. Neiderhiser. The said Robert R. Neiderhiser died on September 11, 1976, having as his residence at the time of his death, R. D. #4, Ligonier, Westmoreland County, Pa. The Register of Wills in and for Westmoreland County, Pa., granted letters of administration to Naomi Neiderhiser on September 15, 1976, which resulted in the petition now before the court.

The issue before the court is whether or not a valid contract of marriage was entered into by Naomi Neiderhiser and Robert R. Neiderhiser in the marriage ceremony performed by Reverend William Jacobs at the Fort Palmer United Presbyterian Church.

It is our intention, in this opinion, to present three parts, namely, the finding of fact, discussion and conclusions of law, so that a better understanding of the entire issue will be easily followed by those not acquainted with the facts in this case.

## FINDINGS OF FACT

1. A marriage license was issued to Robert R. Neiderhiser and Naomi Nicely on August 16, 1976, being license number 184209.

2. The said Naomi Nicely and Robert Neiderhiser appeared at the Fort Palmer United Presbyterian Church, together with various witnesses, on September 11, 1976, and a marriage ceremony was commenced by Reverend William Jacobs, in accordance with the order for the solemnization of

marriage as adopted by the United Presbyterian Church.

3. The ceremony was commenced with the usual prelude as to the reason for the assemblage, and a general charge by the minister, which was followed by a prayer.

4. Naomi Nicely and Robert R. Neiderhiser were each asked the following question, to which they gave a responsive answer, "I will".

"N., wilt thou have this Woman to be thy wife, and wilt thou pledge thy troth to her, in all love and honor, in all duty and service, in all faith and tenderness, to live with her, and cherish her, according to the ordinance of God, in the holy bond of marriage.?

"N., wilt thou have this Man to be thy husband and wilt thou pledge thy troth to him, in all love and honor, in all duty and service, in all faith and tenderness, to live with him, and cherish him, according to the ordinance of God, in the holy bond of marriage?

5. Naomi Nicely and Robert R. Neiderhiser each repeated the following pledge after the minister, except where it was wedded wife in the one instance, and in the other instance, it was wedded husband:

"I, N., take thee, N., To be my wedded wife; And I do promise and covenant; Before God and these witnesses; To be thy loving and faithful husband; In plenty and in want; In joy and in sorrow; In sickness and in health; As long as we both shall live."

6. This being a single ring ceremony, Robert R. Neiderhiser, repeated the following words after placing a ring on the fourth finger of Naomi Nicely, and saying after the Minister—

"With this ring I thee wed, In the name of the

Father; And of the Son; And of the Holy Spirit. Amen."

7. The Minister then commenced the prayer generally recited after the exchange of vows by the parties, and at some point during the prayer, the minister noticed that Robert R. Neiderhiser began to gradually slump to the floor.

8. After a question of inquiry of Naomi Nicely, and while the said Robert R. Neiderhiser still exhibited life, the said Rev. Jacobs did cut the ceremony short and pronounced them husband and wife, either shortly before Robert R. Neiderhiser completely fell to the floor, or right after he hit the floor and prior to his decease.

9. Robert Hoffer, the best man for Robert R. Neiderhiser, who was standing close by, stated that it was a matter of a few seconds from the beginning of decedent's collapse until the point when he was on the floor, and that decedent's knee jerked, which indicated a sign of life, and immediately thereafter, following a gasp, there was no other sign of life.

10. There is no question that at the time the parties repeated their vows or commitments, one to the other, and in the presence of witnesses, that both were mentally competent and had the capacity to consent to the contract which they were entering into in accordance with the religious ceremony.

11. The Reverend William H. Jacobs, the Minister officiating at the ceremony, completed the duplicate that was to be detached and returned to the Orphans' Court of this county, wherein he certified that on September 11, 1976, at the Fort Palmer United Presbyterian Church, Bolivar, R. D. # 1, Robert R. Neiderhiser and Naomi Nicely were united by him in marriage in accordance with the

license issued by the clerk of the Orphans' Court, being license no. 184209. The duplicate was filed on September 14, 1976, as attested to by Paul Suchko, Register of Wills of Westmoreland County, Pa.

## DISCUSSION

The lawyers in their brief are quick to point out this is not a common-law marriage, and that all of the cases pertaining to matters similar to the circumstances herein referred to, usually involve common-law marriages. However, we would like to point out that whether we are considering a ceremonial marriage or a common-law marriage, each depend on a contractual element to sustain their validity.

In the Commonwealth of Pennsylvania, we recognïze two types of marriages, namely (1) ceremonial, and (2) common-law.

A ceremonial marriage is a wedding performed by a religious or civil authority with the usual or customary ceremony or formalities. See Zanfino Estate, 375 Pa. 501, 100 A. 2d 60 (1953).

Generally, a civil marriage ceremony or a ceremony in accordance with the laws or customs of any religious organization is sufficient. It is apparent in reading the general treatise on marriage that the marriage contract must be solemnized according to the ceremony prescribed by law, and that the statutes ordinarily do not prescribe an exact form of marriage ceremony, but authorize the form of ceremony prescribed by the law and customs of various church denominations and religious societies.

In the general treatise in 55 C. J. S. 865, §32, we find this quote which we believe to be pertinent in this instance.

"As a general rule no particular form of words is essential to a ceremonial marriage, *provided the words employed are sufficient to evidence a present contract.*" (Emphasis supplied.)

We find nothing in our search that indicates that the person officiating at a ceremonial marriage must issue a proclamation, so to speak, that the parties are now husband and wife. This court does not feel a proclamation is necessary, because once the parties have exchanged their vows, the contract is complete regardless of what the ceremony thereafter may call for in the way of futher prayers, benedictions, etc. It is our opinion that nowhere in the law is it required that there be a proclamation by anyone proclaiming the parties to be husband and wife. The ceremony, insofar as contractual elements, was complete when the last party exchanged vows, and we hold that everything thereafter, including the giving of a ring or rings was surplusage insofar as the validity of the marriage is concerned.

There is no question in our mind that, in this Commonwealth, both civil and ceremonial marriages must contain words which will effectuate a contract. In a ceremonial marriage, the phrases, "I do", or "I will", are invariably insisted upon from both parties in response to direct questions of the officiating clergyman or civil officer. These phrases, or phrases similar thereto, are essential to constitute a marriage contract.

In the case of Fiedler v. National Tube Company, 161 Pa. Superior Ct. 155, 53 A. 2d 821 (1947), the Superior Court of Pennsylvania enunciated the following general principles:

"Marriage in Pennsylvania is a civil contract and does not require any particular form of solemnization before officers of church or state, but is

entered into by words in the present tense, uttered with a view and for the purpose of establishing the relation of husband and wife. Balanti v. Stineman Coal & Coke Co., 131 Pa. Superior Court 344, 200 A. 236; Wagner v. Wagner, 152 Pa. Superior Court 4, 30 A. 2d 659. The contract of marriage may be proved like other contracts: proof in a specified way or by a designated quantum is not required. McGrath's Estate, 319 Pa. 309, 179 A. 599."

The cases above recited are the leading cases in the Commonwealth of Pennsylvania.

There is undisputed testimony in the case before this court that Robert Neiderhiser and Naomi Nicely had exchanged their vows in the course of the ceremony before the collapse of Robert Neiderhiser. There is undisputed testimony from the minister that the celebrants to the marriage ceremony had performed and spoken every deed and word that would have been required of them in the full course of the ceremony in question. *There was no act or spoken word or indication of assent yet required of Robert* Neiderhiser or Naomi Nicely to complete the ceremony.

The argument of the petitioners would appear to be that it is the pronouncement of marriage by the Minister, rather than the words that express the intent of the parties, by the parties themselves, that creates the marriage contract. *This cannot be so, for if it were so, religion rather than law would determine contract and each form of religion determines differently.* The marriage ceremony has its religious aspect, but is it properly an element of the civil contract of marriage?

Aside from the issue as to whether the Minister made a pronouncement of marriage or not, and there was conflicting testimony, the intent of the parties remains all important. Under statutory law

in Pennsylvania, Act of August 22, 1953, P. L. 1344, sec. 12, 48 P. S. § 1-12, a licensed marriage ceremony may be performed in which the parties solemnize their own marriage without an officiating clergyman.

Webster's New Collegiate Dictionary defines "solemnize" as "1: to observe or honor with solemnity, 2: to perform with pomp or ceremony; esp: to celebrate (a marriage) with religious rites, 3: to make solemn."

It is suggested that these definitions of "solemnize" put into proper perspective the role of the clergyman and the role of religion in a ceremonial marriage.

This court feels that Reverend William Jacobs merely "observed," "honored" and "celebrated" the exchange of vows made by the participants in the ceremony. His pronouncement of their marriage was an "after-the-fact" pronouncement. Neither the Minister, the religion under whose auspices the ceremony was held, nor the guests were in privity to the contract of marriage.

The parties to the marriage in question had already exchanged promises, the all-important ingredients of a binding contract, before Robert R. Neiderhiser collapsed. There was no further assent, by word or deed, required of him, to create the marriage.

## CONCLUSIONS OF LAW

1. That Robert R. Neiderhiser and Naomi Nicely had exchanged the necessary vows to complete the contractual elements essential for a valid marriage.

2. That the filing of the duplicate license by the Reverend William Jacobs is prima facie evidence of the fact that he completed the ceremony in ac-

cordance not only with the laws of the Commonwealth of Pennsylvania, but in accordance with the laws of the United Presbyterian Church.

3. That the certificate by the said Minister raises a presumption of a valid marriage, and the burden is on petitioner to prove otherwise, which they have failed to do.

4. That Robert R. Neiderhiser and Naomi Nicely were married on September 11, 1976, and on his death, the said Naomi Neiderhiser became the widow of Robert R. Neiderhiser, and, as such, is entitled to letters of administration under the laws of the Commonwealth of Pennsylvania.

## ORDER

And now, February 28, 1977, after hearing and due and careful consideration, the petition for removal of Naomi Neiderhiser as Administratrix of the Estate of Robert R. Neiderhiser is hereby dismissed.