## Smith v. Smith

*Joseph Nanovic,* for plaintiff.
*Joseph Heber,* for defendant.

FORD, *J.,* December 8, 1995—On September 7, 1995, the court entered an order in this matter. This opinion is filed in support of that order.

This matter was before the court on the defendant's "petition for hearing on declaratory judgment." Hearings were held on March 27, 1995 and March 28, 1995.

## FINDINGS OF FACT

On March 25, 1974, the plaintiff, Paula A. Buckley, and the defendant, George Smith, were married. On April 10, 1979, a divorce decree was entered divorcing Paula Smith and George Smith from the bonds of matrimony.

In late August of 1981, the parties reconciled and Paula Smith moved into the residence of George Smith. At that time George Smith made the statement to Paula Smith, "You belong to me. Be my wife. You'll always be my wife no matter what." Paula Smith agreed.

After this statement was made, the parties took a honeymoon to Nags Head, North Carolina. The parties

registered on this vacation as Mr. and Mrs. George Smith.

Soon after returning from Nags Head, Paula Smith stated to George Smith, "Let's make it official." George Smith responded, "Not now. We'll get to it. You're my wife. What's the point of it?"

From 1981 to 1990, the parties filed joint tax returns in which they listed their status as "married filing jointly." These tax returns listed the husband and wife as exemptions and were signed by both parties.

On June 10, 1986, George Smith executed a will in which he referred to Paula Smith as his wife throughout, including in giving her the residue of his estate and in naming her executrix. Paula Smith had a similar will.

The parties had a homeowners' insurance policy in both parties' names and received correspondence regarding these policies addressed to Mr. and Mrs. George Smith.

The parties maintained a joint checking account. The parties' names appear on the checks. The account was opened with a signature card containing the signatures of George Smith and Paula Smith.

In the 1980's, Paula Smith received numerous cards from the defendant and his family members. Included in these were two cards from the defendant. The defendant gave the plaintiff an Easter card that included a poem entitled, "What is a Wife?". The defendant also gave the plaintiff a Mother's Day card that was addressed, "Happy Mother's Day to My Wife."

On July 5, 1991, both George and Paula Smith had blood testing for a marriage license. The parties applied

for a marriage license on July 29, 1991 and a marriage license was issued on August 2, 1991. However, a ceremonial marriage did not follow.

In an effort to demonstrate that the parties did not have a reputation in the community as husband and wife, the defendant presented several witnesses.

The parties had a reputation in the community during the relevant time as a married couple. Henry Fretz testified that he has known the parties for 10 to 20 years. He testified that, from all appearances, they acted like husband and wife and presented themselves as a couple. He testified that he was shocked when George Smith stated to him, after the final separation, that the parties were not married.

Mary Gregory, a casual friend of the parties, testified that she assumed the parties were husband and wife and the parties did not act any differently. She testified that the parties were introduced to her as husband and wife. Ms. Gregory testified that she knew the parties were divorced and back together again. She assumed that when they got back together, they were married.

Sylvia Suder, close friend of the parties, testified that she has known the parties since 1973. She was aware of the marriage, divorce and reconciliation. She gave specific instances when George Smith referred to Paula as his wife and Paula referred to George as her husband. Ms. Suder testified that Paula and George Smith presented themselves as husband and wife to others and this is how she considered them.

## DISCUSSION AND CONCLUSIONS OF LAW

"Marriage in Pennsylvania is a civil contract by which a man and a woman take each other for husband and wife. There are two kinds of marriage: (1) ceremonial;

and (2) common law." *In re Manfredi Estate,* 399 Pa. 285, 291, 159 A.2d 697, 700 (1960).

"It is too often forgotten that a common-law marriage is a marriage by the express agreement of the parties without ceremony, and almost invariably without a witness, *by words*—not in futuro or in postea, but—in praesenti, uttered with a view and for the purpose of establishing the relationship of husband and wife." *Id.* at 291, 159 A.2d at 700 (emphasis in original) *(citing, Fiedler v. National Tube Company,* 161 Pa. Super. 155, 53 A.2d 821 (1947); *Rosenberger Estate,* 362 Pa. 153, 65 A.2d 377 (1949); *Craig's Estate,* 273 Pa. 530, 117 A. 221 (1922); *Commonwealth v. Stump,* 53 Pa. 132 (1866); *McGrath's Estate,* 319 Pa. 309, 179 A. 599 (1935)).

A marriage contract does not require any specific words, but all that is required is proof of an agreement to enter into the legal relationship of marriage at the present time. *In re Estate of Garges,* 474 Pa. 237, 241-42, 378 A.2d 307, 309 (1977).

Futhermore, "[c]ohabitation and reputation of marriage do not alone create a marriage. They are only mere circumstances from which a marriage may be inferred and rebutted by other facts and circumstances." *Canute v. Canute,* 384 Pa. Super. 60, 63-64, 557 A.2d 772, 774 (1989). "Cohabitation of a man and a woman, both of whom are capable of contracting marriage, and a reputation as husband and wife in their community together raise a presumption that the parties have contracted marriage." *Garges, supra* at 241, 378 A.2d at 309. "However, resort to the presumption based upon proof of cohabitation and reputation is proper only where

direct evidence of the alleged marriage agreement is unavailable." *Giant Eagle v. W.C.A.B. (Bahorich),* 144 Pa. Commw. 552, 555, 602 A.2d 387, 388 (1992), *alloc. denied,* 533 Pa. 614, 618 A.2d 403 (1992).

After reviewing the testimony in light of these standards, the court finds that Paula Smith and George Smith entered a common-law marriage on or about August 31, 1981.

As related above, in late August of 1981, when the parties were discussing reconciliation, George Smith stated to Paula Smith, "You belong to me. Be my wife. You'll always be my wife no matter what." Paula Smith then agreed. George Smith's statement indicates that he had a present intention to have Paula Smith as his wife and she agreed to this relationship. These words established a common-law marriage. They demonstrate a clear desire to reestablish a marital relationship.

Substantial evidence was presented which corroborated that the parties intended to marry. "Once evidence of what may be a marriage contract is presented, evidence that the parties acted in a manner consistent with such an agreement, and that the community believed such an agreement existed, is relevant to the issue whether the contract actually existed." *Garges, supra* at 242 n.8, 378 A.2d at 309-310 n.8.

The parties lived together continuously after the marriage. They filed joint tax returns in which they represented themselves to the federal government as spouses. If they were other than spouses when they made these representations, criminal prosecution may be in order, a fact known to the parties. They had at least one joint insurance policy. The parties executed

wills in which they referred to each other as a spouse and beneficiary. The parties had a joint checking account. In cards, the defendant referred to plaintiff as his wife. Close friends of the parties testified the parties held themselves out to the public as husband and wife.

It is true that defendant presented testimony that the reputation of the parties in the community was not as a married couple. Robert Miller testified that George Smith discussed with him his difficulties in his relationship with Paula Smith; and that defendant told him that he was never getting married again. Mr. Miller did not believe the parties were married.

Nicki Smith, daughter of the parties, testified that, at Christmas of 1992, plaintiff told defendant, "I don't have to tell you where I was. I'm not your wife." Ms. Smith testified that she also heard plaintiff repeatedly ask defendant to get married during 1991.

Francis Dicandilo testified that he has known George Smith since 1972. He knew the parties were married and divorced, but he did not know the parties' present arrangement. He did not consider George Smith as married.

Delores Stewart, sister of defendant, testified that she knew the parties were divorced and knew George did not remarry Paula.

Delores Sabatino, niece of defendant, testified that she knew George and Paula Smith were married, divorced and back together again. She once heard George Smith state that he will never marry Paula again.

Josephine Smith, mother of the defendant, testified that her son told her he would not marry again. She

also testified that she rarely spoke to Paula Smith after the divorce and did not consider her a daughter-in-law.

Clara Gillespie, sister of George Smith, testified that she considered George and Paula Smith single after the divorce even after they resumed a residence together.

Some of this testimony from the defendant's witnesses was based on supposition and unsubstantiated belief (to a certain extent, this is also true of the testimony of plaintiff's witnesses who testified as to reputation). The more convincing evidence was that the parties repeatedly and consistently held themselves out to the community as married.

Here we have all the hallmarks of a common-law marriage. It was formed with words of marriage, in praesenti. It was followed by cohabitation and reputation. The reputation was based on a string of factors whereby the parties held themselves out as spouses.