## Commonwealth ex rel. Pilla, Appellant, *v.* Pilla.

Argued March 20, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Leo Francis Doyle,* for appellant.

*B. I. Shoolin,* for appellee.

OPINION BY WATKINS, J., April 16, 1959:

This is an appeal from an order of the Municipal Court of Philadelphia denying the support petition of Nora Pilla, the appellant, on the ground that a valid common law marriage never existed between her and her alleged husband, Carl Pilla, the appellee.

Nora Pilla testified that she and the appellee were married on October 1, 1952 by common law in Philadelphia, Pennsylvania. The record discloses that a meretricious relationship between the parties began in 1949 or 1950, at which time the appellee was a married man with three children. The wife of the appellee divorced him on October 10, 1952.

As to the alleged common law ceremony, the appellant testified: "I knowed him (defendant) around 1949. Then in October, 1952, he got a divorce from his wife ... So this minister came to the house and he said, You kids ought to go through a ceremony and then you can live together, and then he asked me if I would be Carl's wedded wife, and I said, Yes, and he asked Carl and he said, Yes, and he read the Bible in front of us. Q. Did you get a license? A. No, that was an Indian ceremony we went through." Questioned as to what response she gave when "the minister asked would you take him as your husband?", she testified: "A. I said, Yes, sir. Q. Yes, sir? A. Yes, sir, I will. Q. Yes, sir, I will? Did you say, Yes, I do at any time? A. Well, I was pretty nervous. Q. Did you say, Yes, I do?

A. That is probably what I did say. Q. I am not asking you what you probably said; I am asking what you said. A. Yes. . . . I do and I will. I said them all because I was happy . . . He (defendant) said I will. . . . He said, I do. . . . He (minister) went on and finished it and said, Will you stick through sickness and death? or something like that, and we said Yes and then he finished."

The appellee disputes this evidence and denied any such event ever took place and he is certainly supported by the admitted fact that in May, 1957, they both took blood tests, went to the City Hall and got a license, and even had a minister waiting, when, according to the appellant, he did not go through with it, and according to the appellee, his children did not want him to get married. If the appellant were telling the truth about the so-called "Indian ceremony", why did she make such a strenuous attempt to get married in 1957? It seems clear that the court below, having had the opportunity of seeing and hearing the witnesses, indicated that it was not impressed with the truthfulness of the appellant as regards the "Indian ceremony" but believed the appellee that it never took place. The court below found further that even if it did take place, the appellee was a married man at the time.

Whether a marriage contract has been established is always a mixed question of law and fact and we, as the reviewing court, are bound to scrutinize all the evidence but if there is sufficient evidence to support the factual findings of the court below, such findings should not be disturbed. Here this is not even a close question—there is evidence that is clear, sufficient and substantial to support the finding that no marriage contract ever existed between the parties.

"Cohabitation and reputation that the parties are married do not constitute a legal marriage—not even

a common law marriage—but they are evidence from which a marriage may be found, if the circumstances are sufficiently strong and convincing to satisfy the triers of fact." *Rager v. Johnstown Traction Company*, 184 Pa. Superior Ct. 474, 477, 134 A. 2d 918 (1957).

In *Rager v. Johnstown Traction Company*, supra, a workmen's compensation case, where we found that the essential verba de praesenti, as required by law, were used to bring about a common law contract, certainly gives no comfort to the appellant's case. In that case, there was clear evidence of cohabitation and reputation of marriage to establish a presumption of a valid, common law marriage contract. Both of the parties were free to enter into a valid contract at the time they started living together.

This Court recognized in the *Rager* case the established principle that if the party is not satisfied to rest her case on reputation and cohabitation but attempts to prove the marriage by contract and then fails to do so, the presumption arising from reputation and cohabitation, no matter how strong, must give way to the proof that no contract was ever made. *Caddy v. Johnstown Firemen's Relief Association of the State of Pennsylvania*, 129 Pa. Superior Ct. 493, 495, 196 A. 590 (1938).

The claimant in the *Rager* case took his position so that it became the court's duty to determine whether a contract of marriage took place at the beginning of the relationship. Although the presumption no longer existed, the proof of reputation and cohabitation buttressed her over-all case and certainly had an effect in the final determination of the existence of the contract.

Here, however, the evidence of cohabitation and reputation in the face of the appellee's disability, dis-

close a purely meretricious relationship. Evidence of cohabitation is certainly present in this record but it is doubtful if there is evidence of reputation of marriage but if both were present they would be insufficient to create any presumption here or serve as evidence to support a marriage contract because of the legal incompetency of the appellee. *Pierce v. Pierce,* 355 Pa. 175, 179, 49 A. 2d 346 (1946). As was well said by Judge KALLICK, of the court below, "We are far from convinced of reputation, that is that plaintiff and defendant held themselves out as man and wife and were generally regarded as such. The inception of their relationship was meretricious and in our opinion it continues so this very day. A meretricious relationship once established is presumed to continue where such a relationship has been entered into by parties legally incompetent to marry. It can be converted into a valid and legal marriage after the obstacle to their marriage is removed only by the consent of both parties, established by clear and convincing evidence. Pierce v. Pierce, supra; Wagner v. Wagner, 152 Pa. Superior Ct. 4, 8; McLaughlin's Estate, 314 Pa. 574, 578. Such clear and convincing evidence is lacking in our case."

No presumption ever arose and the proof of a common law marriage by the Indian ceremony failed when the court below believed the appellee that no such ceremony ever took place and that if it did the appellee was then still married and whatever took place had no contractual effect. We, therefore, do not have to determine whether the words disclosed by the testimony as the basis of the common law contract were the required essential verba de praesenti. Judge KALLICK, speaking for the court below, puts it this way. "The burden of establishing a common law marriage after the removal of a pre-existing disability is upon the one asserting it,

in this instance, the petitioner. It is well settled in this Commonwealth that words sufficient to establish a common law marriage contract must be in the present tense. They must be positive and not indefinite. Words saying 'I will take you' to be my husband or wife have been held insufficient. Pierce v. Pierce, supra.

"Plaintiff's attorney tried very hard to wheedle or coax from the plaintiff the verba de praesenti ('I do') that were allegedly uttered by the plaintiff and defendant at the time of the 'Indian ceremony.' The plaintiff, however, either didn't recall these times or, it became more and more apparent, they were never said. We believe the latter alternative."

Order affirmed.