Mainor *v.* Midvale Company et al., Appellants.

Argued March 22, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*Herbert A. Barton,* with him *Swartz, Campbell & Henry,* for employer, appellant.

*Wilson H. Oldhouser* and *Lewis Walters,* Special Assistant Attorneys General, and *Anne X. Alpern,* Attorney General, for Commonwealth, appellant.

*Alan R. Howe,* with him *Edward Davis,* for appellee.

OPINION BY GUNTHER, J., June 15, 1960:

In this workmen's compensation case, both the employer, Midvale Company, and the Commonwealth have filed appeals from the order of the court below in remitting the record to the Workmen's Compensation Board for more specific findings of fact.

Mary B. Mainor, claiming to be the common law wife and widow of William Mainor, filed a fatal claim petition on December 6, 1956 under the Occupational Disease Act as a dependent. In this petition she set forth that her marriage to William Mainor took place in 1940. Both appellants filed answers to this petition denying, in effect, that claimant was a common law wife and on March 12, 1957, this matter came on for hearing. The referee filed a decision on January 16, 1958, awarding compensation to appellee as the common law wife of William Mainor. This adjudication was appealed to the Workmen's Compensation Board which, on April 8, 1959, reversed the referee's finding of a common law marriage and substituted its own finding that from 1940 to the date of death on November 13, 1956, Mary B. Mainor was living with the decedent in a meretricious relationship and concluded that she was not entitled to compensation.

On April 21, 1959, an appeal was filed by Mary B. Mainor to the Court of Common Pleas No. 4 of Philadelphia County, which ordered the record remitted to the board for more specific findings upon matters indicated in its opinion. From this order the present appeals were taken.

The basic question raised here, as well as before the board and the court below, is whether there was a valid common law marriage. If there was no valid common law marriage proved, the corollary is whether the court below properly remitted the record to the board.

Upon the death of William Mainor, a claim petition was sent to claimant from Harrisburg. She sought the aid of one of the men in charge of the Philadelphia office of the Workmen's Compensation Board in filling out the petition and she gave the information which was used to file the petition. The fourth paragraph of the printed petition required information as to the marital status of the claimant and in answer to this requirement, she stated that the marriage was a common law marriage in 1940. This petition was sworn to on December 3, 1956. At the beginning of the hearing before the referee, claimant's attorney moved to amend the date appearing in paragraph 4 from the year 1940 to April, 1953. This amendment was permitted over objection.

Claimant stated that she first met William Mainor between 1940 and 1941 and that she lived with him since 1940 from which time she was known as Mrs. Mainor. She admitted that she knew that William Mainor had a legal wife living when they began living together. It was shown that William Mainor obtained a divorce from his legal wife, Blanche Square Mainor, on April 22, 1953 and that immediately after that date he returned to her, at which time the following is alleged to have taken place: "Q. Tell us, what happened after that? Where was the divorce secured? A. North Carolina. So he came home about five o'clock in the morning. Q. Was that on the 22nd or 23rd? A. That was on the 22nd; yes. Q. Yes. Then he came home— well, the same morning he got home so that had to be the 24th. A. 23rd. So he met me and said—Q. Tell us whether he had his papers, A. He had his papers. He told me I was his wife. Q. Did he give you anything at that time? A. Gave me the ring. Q. Is that the ring (indicating)? A. That's the ring. Q. That you are wearing now? A. Yes." Over objection, she.

was permitted to testify further: "Q. Tell us what took place at that time? A. Well, we kissed and we didn't have time—he went to work—we both had to go to work, and he said as I told you. Q. Tell us what he said. A. He said, 'Now you are my wife,' and I said, 'You are my husband.' Q. On April 23, 1953? A. That's right."

This was all the testimony surrounding the marriage contract and all this testimony came from the lips of the claimant. She was compelled to admit, however, that up until 1953, she used and was known by the name of Mary Bibbins. As a matter of fact, she received the proceeds of a life insurance policy from the National Life and Accident Insurance Company, Nashville, Tennesee, under the name of Mary Bibbins in November of 1956.

It is clear from the evidence that the commencement of this so-called common law marriage was meretricious at its inception and continued that way at least until 1953. Such a relationship is presumed to be illicit unless and until clear and convincing evidence is produced to show a change of circumstances. Whatever evidence in regard to a change of status was offered came from the lips of the claimant, a very much interested party, and such testimony must be received with caution and scrutiny. *Stevenson's Estate,* 272 Pa. 291, 116 A. 162; *Pierce v. Pierce,* 355 Pa. 175, 49 A. 2d 346; *Wagner v. Wagner,* 152 Pa. Superior Ct. 4, 30 A. 2d 659. Since claimant here relied on the alleged contract of marriage in 1953, evidence of cohabitation and reputation is of no avail. *Fiedler v. National Tube Co.,* 161 Pa. Superior Ct. 155, 53 A. 2d 821. Bearing upon the quality of the requisite proofs in such a case, our Supreme Court in *Stauffer Estate,* 372 Pa. 537, 94 A. 2d 726, quoted with approval the following from *Buradus v. Gen. Cement Prod. Co.,* 159 Pa. Superior Ct. 501,

48 A. 2d 883: "There has been a growing judicial impatience of the invitation to perjury in cases depending for recovery on marriage at common law and a progressive change in judicial view requiring higher degrees of proof where such marriages are asserted." And in *Baker v. Mitchell et al.*, 143 Pa. Superior Ct. 50, 17 A. 2d 738, we held that "The law of Pennsylvania recognizes common law marriages. But they are a fruitful source of perjury and fraud, and, in consequence, they are to be tolerated, not encouraged; the professed contract should be examined with great scrutiny, and it should plainly appear that there was an actual agreement entered into, then and there, to form the legal relation of husband and wife."

The instant case is a typical illustration. Claimant, faced with her assertion that a common law marriage took place in 1940, which at the time could have been nothing more than a meretricious relationship, changed her proof to that of a novation which occurred after the legal impediment to any type of marriage had been removed. Such testimony, of course, had to be carefully scrutinized by the board. The credibility of the witness and the weight of conflict in such evidence were exclusively for the board to resolve and, as we stated in *Zilek v. C. C. Coal Co.*, 186 Pa. Superior Ct. 628, 142 A. 2d 507, the trier of facts is not required to accept even the uncontradicted testimony as true.

The board made reference to the evidence offered by claimant to the effect that at the time of the alleged common law marriage in 1953, she received a ring from the deceased. The board said: "We state as a fact that, as a result of our review of all of the testimony, a wedding ring was actually given to the claimant on the 23rd day of April, 1953, and, further assuming, for the sake of argument, that a wedding ring was given. In

this case we deem it insufficient to establish the legal union which is required by the compensation law." What the board said was, plainly, that the giving of a ring would not be sufficient to change an illicit relationship to a common law marriage, and it properly concluded that no common law marriage contract had been proved. The court below took this statement of the board to declare that "the intention of the board is not clear and that this finding of the board involves an important aspect of the case." In view of the clear-cut finding of the board that no common law marriage contract had been proved, we cannot agree with the court below that this case should be remitted to the board for an explicit finding on this point. The only purpose in remitting the case to the board would be to make a finding that this fact, by itself, would make out the common law marriage contract. We have stated in *Fronko v. U. S. Sanitary Manufacturing Co.*, 155 Pa. Superior Ct. 636, 39 A. 2d 363, that what a court cannot do directly, it cannot do indirectly by remitting the case for further findings when such an order is, in effect, an instruction to make a finding in a given way. We agree with the board that the testimony offered, even if believed, falls short of establishing a valid marriage. Remitting the record would serve no useful purpose.

The order of the court below is reversed.