### Commonwealth ex rel. Drebot *v.* Drebot, Appellant.

440

Argued June 14, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WATKINS, MONTGOMERY, and FLOOD, JJ. (WOODSIDE, J., absent).

*William E. Woodside,* for appellant.

*Edgar R. Casper,* Deputy Attorney General, with him *Marshall M. Cohen,* Assistant Attorney General, *Alan Miles Ruben,* Deputy Attorney General, and *David Stahl,* Attorney General, for Commonwealth, appellee.

OPINION BY FLOOD, J., November 15, 1962:

In this appeal from an order of the court below directing him to support the relatrix the appellant contends that the evidence is legally insufficient to support the court's finding that the parties contracted a valid common law marriage.

The record discloses that the relatrix was married to Wilson Snyder when she and the defendant first began living together in December 1949, that she was

divorced from Snyder in June 1951, that the parties ceased living together in September 1959, and that the defendant subsequently married Patricia Ruhl, by whom he subsequently has had at least one child.

Since the parties' relationship was meretricious at its inception, and such a relationship, once established, is presumed to continue, the relatrix had the burden of establishing by clear and convincing evidence that the parties entered into a valid common law marriage after the legal obstacle to such a marriage was removed. See *Pierce v. Pierce*, 355 Pa. 175, 179, 49 A. 2d 346, 348 (1946); *Mainor v. Midvale Co.*, 192 Pa. Superior Ct. 367, 371, 162 A. 2d 27, 30 (1960).

The principal evidence relied upon by the court below to sustain the heavy burden of proof assumed by the relatrix was testimony that the parties obtained a marriage license in Schuylkill County on March 15, 1952, for which no return was ever made, and testimony by the relatrix that on March 28, 1952, the parties went through a civil marriage ceremony performed by a "squire". This testimony was not contradicted as to the marriage license but as to the performance of the marriage ceremony it was uncorroborated and was contradicted by the defendant. Her son, who was about eleven years old and living with the parties in 1952, testified that he never heard of it until the date of the hearing in 1961.

In its opinion, prepared from notes taken at the time of the trial and without benefit of the transcript of the testimony, which had been lodged in this court, the court below stated that it was impressed by the relatrix's straightforward account of the marriage ceremony and that it based its determination that the parties had entered into a valid common law marriage on that testimony.

While the determination of the hearing judge on credibility normally is entitled to great weight, we can-

not adopt it in a case where the plaintiff seeks to prove that a relationship, meretricious at its inception, subsequently was converted into a valid common law marriage, unless the evidence is clear and convincing. And evidence on the subject coming "from the lips of the claimant, a very much interested party . . . must be received with caution and scrutiny". See *Mainor v. Midvale Co.,* supra, at page 371, 162 A. 2d at page 30.

Our examination of the transcript discloses that the testimony of the relatrix, relied upon by the hearing judge, is far from clear and convincing. On the contrary, it is vague, confused, and contradictory and, as a consequence, legally insufficient to support the finding based upon it.

On direct examination the relatrix testified that on a Saturday night in March 1952, while the parties were living together with the defendant's mother at his brother's home in Lykens, Pennsylvania, the defendant said they were going to be married, drove her to a house in the "city part" of Philadelphia, as distinguished from suburban Philadelphia, went through a marriage ceremony with her which was performed by a man described by the defendant as a squire in the presence of that man's wife, paid the man, went to a little restaurant to eat, and then returned with her to the parties' home in Lykens. The relatrix further testified that the parties went to Pottsville Court House to get their marriage license before they went to Philadelphia and that the ceremony was known to "lots of people".

On cross-examination the relatrix repeated that the ceremony took place in Philadelphia, but this testimony was impeached by her admission that a letter, produced by the defendant, was sent by her to the mother of the defendant's present wife following the parties' separation in September 1959. In this letter the relatrix stated among other things: "He got me the marriage

license in Pottsville courthouse March of 1952 and we went to a small town out the road there and got married by a squire afterwards. I heard the Squire died. I sent to the courthouse for the marriage certificate lately & it was never signed by the squire & I forgot his name & don't even know the town but we went through the vows just the same. There were no wit: nesses at the wedding . . ."

The relatrix also admitted on cross-examination that she commenced a support action against the defendant before Alderman Claude W. Manney in Dauphin County on May 7, 1960, in which she was represented by counsel, that she designated herself and signed her name in that proceeding as "Francis E. Snyder", and claimed no support for herself, but only for her daughter, Paulette. When questioned about this she volunteered the explanation that the defendant had asked her to keep their marriage a secret until after his mother died and that she did not mention the marriage at all. "Mr. Manney, sent [sic] it down, out of wedlock . . ." However, under further questioning she stated: "Mr. Manney . . . just told me to get support for her [Paulette]—he said he didn't think I could if my marriage license wasn't filled out—he said I couldn't get no support for myself."

The relatrix also admitted for the first time under cross-examination that, after obtaining the marriage license in Schuylkill County, she and the defendant went to two priests to get married and neither would marry them because she was divorced. In this connection, the defendant testified that they got the license and went with it to a priest who refused to marry them because she was divorced, and that they never went to a squire.

After repeating her testimony that the alleged marriage ceremony took place in Philadelphia, in the face of the letter in her own handwriting stating that the

parties had gone "to a small town out the road there and got married by a squire", the relatrix explained, "I thought it was a small town we went through— there are lots of small towns to get there before we got there and afterwards."

Under further cross-examination the relatrix impeached her prior testimony that the ceremony was known to "lots of people" by stating that she did not tell anybody about it. So far as the record discloses she never told anyone of the alleged ceremony until long after the defendant left her. Her statement that she kept the ceremony secret because the defendant did not want his brother and mother to know it is inconsistent with the only other evidence in the record which tends to support a finding that the relationship was other than meretricious, namely the relatrix's testimony that "almost every day in the week or every time we met somebody he introduced me as his wife and he introduced himself as my husband."

The cases cited by the relatrix to support the finding of the court below either are distinguishable or they support the appellant rather than the relatrix. In *Krystkiewicz's Estate,* 310 Pa. 298, 165 A. 230 (1933), there was no legal obstacle to a valid marriage nor any other fact which rendered the relationship of the parties involved in that case meretricious at its inception.

*Pierce v. Pierce,* 355 Pa. 175, 49 A. 2d 346 (1946), and *Commonwealth ex rel. Pilla v. Pilla,* 189 Pa. Superior Ct. 302, 150 A. 2d 365 (1959), affirmed orders of the court below which in each case disbelieved the defendant's testimony concerning an alleged common law marriage ceremony and concluded that no valid common law marriage had taken place. The Supreme Court and this court, in affirming, reiterated the rule that the appellant had the burden of establishing her claim by clear and convincing evidence.

In the case before us the relatrix's evidence, being inconsistent, confused, contradicted, and unsubstantiated, is legally insufficient to support the finding and order of the court below.

Order reversed.

WOODSIDE, J., took no part in the consideration or decision of this case.