## Lesnevec Estate

*Samuel Glantz,* for accountant.
*Alfred F. Shea,* for objectors.

SATTERTHWAITE, P. J., November 19, 1971.— The first and final account of Jane Lesnevec, administratrix of the estate of said decedent, was presented to the court for audit, confirmation and distribution of ascertained balances on August 3, 1970, as advertised according to law. Due proof of appropriate notice thereof to all parties legally interested in said estate appears in the record.

Said account has been examined and audited by the court. Balances for distribution shown thereby include principal in the amount of $9,302.04, composed of items of personalty in kind at $2,825 and cash of $6,477.04; and income in the amount of $81.67 in cash. Said respective balances for distribution appear to have been correctly computed and stated on the accounting filed.

No additional receipts or disbursements since the accounting were suggested.

Pennsylvania transfer inheritance tax has been paid in the amount stated on the receipt of the register attached to the petition for adjudication. Whether or not such payment was in full discharge of the tax liability of the estate cannot be ascertained from the within record. Accordingly, the awards hereinafter directed are made subject to such liability, if any, as may still, in fact, be due thereon for transfer inheritance tax.

No unpaid claims against the estate were presented.

Problems for adjudication in connection with the audit of the within accounting are all related to the determination of the controverted status of accountant Jane Lesnevec as the wife of decedent at the time of his death. Objections were filed to the accounting on the premise that she was not his widow and, hence, not entitled to the $255 Social Security "lump-sum" death payment or the $1,000 family exemption. It was

also stipulated that ruling on her status for purposes of these objections would likewise govern the ultimate question of whether she would be entitled to a widow's share of distribution of this intestate's estate.

A hearing was held by the undersigned auditing judge at which evidence was produced by accountant as well as by the objectors, decedent's son and daughter by an earlier marriage. Subsequent thereto, the auditing judge was requested by counsel to defer the filing of an adjudication pending the outcome of negotiations toward an amicable settlement of the problems. Advice has now been received, however, that such negotiations have not borne fruit and that the court would be required to dispose of the matter on the merits and adversarily.

Two preliminary questions must be disposed of at the outset. The first objection to the account is entirely formal, with no real significance. Accountant's counsel, in preparing the account, inadvertently identified accountant as "executrix," rather than as "administratrix" of the estate of the within decedent. The objection to this stylistic designation is sustained but declared to be of no moment; the caption of the accounting is hereby directed to be regarded as amended, nunc pro tunc, so as to identify accountant as administratrix.

The second objection, that pertaining to accountant's failure to include among the estate's assets the $255 Social Security death payment, is beyond the jurisdiction and competence of this court to adjudicate. The relevant provision of the Act of Congress, 42 U.S.C. 402(i), directs that payment of this benefit shall be made "to the person, if any, *determined by the Secretary to be the widow* or widower of the deceased and to have been living in the same household with the deceased at the time of death." (Italics supplied.) Congress, accordingly, has left it to the determination

of the Secretary of Health, Education and Welfare whether or not a particular claimant *to this benefit* was the decedent's spouse, and no authority is conferred, to which the attention of the auditing judge has been directed, which would give this court any power or jurisdiction to review that determination. Accordingly, if, in fact, the death benefit was paid to accountant on the basis that the secretary had so determined her status as decedent's widow, so be it, and this court may not overrule that determination *for that purpose.* Conversely, it is equally true that the Secretary of Health, Education and Welfare has no power or jurisdiction to control or adjudicate the descent and distribution of the estate of a Pennsylvania decedent being administered by a personal representative accountable to this court. Therefore, it also follows that the secretary's determination of the question of accountant's status as decedent's spouse is not controlling *for the latter purpose* and has no bearing upon this court's resolution thereof. The second objection is overruled.

On the merits of the third objection, accountant's entitlement to the family exemption, and the even more important matter of her right to a distributive share of the estate, as decedent's surviving spouse, the testimony adduced at the audit hearing was conflicting. On the crucial issues, however, the auditing judge has concluded that the weight of the evidence is with objectors and that accountant's claimed status as decedent's widow must be denied and refused.

It was established by stipulation that decedent had been married to one Laura Lesnevec, mother of objectors, and had remained married to her until a divorce was entered in this court on May 22, 1947. Decedent's son William, one of the objectors, corroborated by decedent's nephew Walter Bytof and by decedent's niece Victoria Festa, testifed that Jane Lesnevec, ac-

countant and claimant, was living with, and occupying the same bedroom as, decedent at or prior to the time of a birthday party for decedent on December 17, 1946. William was still living at home as a part of decedent's household until his own marriage in 1949, and he recalled the birthday party as having been in the year 1946 by association with a new automobile which decedent had bought for him during that year when he (the son) was 20 years of age. Bytof was able to recall the date of this birthday party because it was later in the same year from the September or October of 1946 when he had commenced working for the same employer by whom he is still employed; moreover, he would from time to time, when work was slow with this excavation firm during cold weather, work part time with decedent, his uncle, and he had a recollection of being at decedent's home on occasion to go out on his trash or garbage collection truck as early as 5:30 a.m., at which hour Jane Lesnevec was always present in late 1946 and early 1947. Mrs. Festa testified that she had met claimant Jane Lesnevec during the summer of 1946, that the latter was at decedent's home from that time on and would answer the telephone whenever the witness would call, that she was present at the birthday party in December 1946, and that she was positive of the year as having been prior to the time of decedent's divorce from his first wife (May 1947) because she had been consulted about being a witness in those proceedings at a time when Jane Lesnevec was already established in decedent's home.

Accountant-claimant Jane Lesnevec testified, of course, in opposition, and, notwithstanding objection thereto by the other side, she was properly permitted to do so. Where the matter in controversy concerns the property of decedent and arises between parties

claiming the same by devolution or operation of law, as here since decedent died intestate, all parties are fully competent witnesses under the so-called "Dead-Man's" Act of May 23, 1887, P. L. 158. sec. 5, cl. (a), 28 PS §322; McGrath's Estate, 319 Pa. 309, 315 (1935). The objection, as to which ruling had been reserved at the hearing, should have been, and hereby is, overruled.

Jane Lesnevec's testimony, however, while properly received, was totally lacking in persuasiveness and conviction. She would have the auditing judge believe that she had not even met decedent until April 11, 1947; that she and decedent were ceremonially married on May 27, 1947, by a judge or justice of the peace, before two witnesses, somewhere in New Jersey; that the judge, whom she believed to have been a "Judge Loughlin," is now deceased, as are the two witnesses, known to her only as Frances and Mike; that she has been unable to locate the "paper" (marriage certificate?) which she states was given to decedent after the ceremony or to obtain any official record thereof, since she claims not to have known where the judge's office was located; that after a one-day honeymoon in Atlantic City, she and decedent returned to his Bucks County residence and cohabited thereafter as man and wife until shortly prior to his death on June 16, 1968.

Except as to the fact of cohabitation and, probably, reputation of decedent and Jane Lesnevec as husband and wife for a period of some years prior to decedent's death, she was entirely uncorroborated. None of her witnesses could back up her statements relative to the time when she and decedent first cohabited, and it was implicit in her story of the alleged marriage ceremony that the same was totally unsupported by evidence other than her own ambiguous and incredible statement thereof.

The auditing judge finds it impossible to give

credence to her contention that, although she lived in Cooperstown, N. Y. when she first met decedent in a bar in Camden, N. J., in April, 1947, she had "commuted" daily from New York City to decedent's pig farm in Bensalem Township, Bucks County, to visit and work with him for a week or so in connection with his trash or garbage collection business but did not live there with him prior to marriage; that, without more, when he met her train from New York at either Trenton or Camden, N. J., on May 27, 1947, he confronted her with the question "Are you going to get married or nothing? You was either going to get married today, or going back home"; that they went to a place "where you go to get the license" (probably outside of Trenton, but not further identified), then across the street to buy rings for $250 and to another location (likewise unknown) to pick up the witnesses (known only as Frances and Mike) and finally, at a time after four o'clock in the afternoon, to still another place ("a little small settlement toward the shore like, but I couldn't tell you where it was") where Judge Loughlin performed the marriage ceremony.

Notwithstanding that after decedent's death she assured decedent's son and daughter (objectors) that she would show them the marriage certificate, and notwithstanding that she admitted then finding many of decedent's papers, such as tax receipts and returns, deeds, contracts for trash and garbage collection, cancelled checks and divorce documents, she never has produced any marriage certificate. Moreover, although she seemed to have considerable knowledge of Judge Loughlin's family, including information from Judge Loughlin's wife "about ten years ago" in Croydon, Bucks County, to the effect that the judge had died, and further that he had lived and been a judge in both Pennsylvania and New Jersey, neverthe-

188

less, she was unable to obtain any documentation or corroboration of the marriage.

It may well be that a fact finder could be justified in concluding that the marital relationship might exist between eligible parties in a given case, notwithstanding that evidence of the actual marriage was equivocal and even unreliable standing alone, where proof also was furnished of cohabitation and reputation: compare Drinkhouse Estate, 151 Pa. 294 (1892); Stauffer Estate, 2 Bucks Co. L. Rep. 43, 48 (1952), affirmed 372 Pa. 537 (1953). But cohabitation and reputation do not, in themselves, constitute marriage and will not justify a finding of that relationship, without more, if the parties initially were not free to marry or that conclusion otherwise be negated factually or legally in the premises.

The situation in the instant case is in the latter category and is governed by the principles enunciated and applied in Commonwealth ex rel. Drebot v. Drebot, 199 Pa. Superior Ct. 439 (1962), a proceeding for support of relatrix as the wife of defendant. The parties had commenced cohabitation at a time when relatrix was still married to another. After she became divorced, the parties obtained a marriage license, but their evidence was contradictory as to the actual use thereof. Relatrix testified to a marriage ceremony before a justice of the peace or "squire," whose identity, as here, was claimed to be unknown and for which ceremony no documentation or proof other than relatrix' statement was produced; her testimony was, again as here, indefinite and equivocal, with respect to the surrounding circumstances. Defendant, on the other hand, denied the marriage, explaining that the license had not been used; that a priest had refused to marry them because of the divorce and they had never gone to a "squire."

The Superior Court, reversing the trial court, held that no marriage had been made out, observing at pages 441-2:

"Since the parties' relationship was meretricious at its inception, and such a relationship, once established, is presumed to continue, the relatrix had the burden of establishing by clear and convincing evidence that the parties entered into a valid common law marriage after the legal obstacle to such a marriage was removed. See Peirce v. Peirce, 355 Pa. 175, 179, 49 A. 2d 346, 348 (1946); Mainor v. Midvale Co., 192 Pa. Superior Ct. 367, 371, 162 A. 2d 27, 30 (1960).

. . .

"Our examination of the transcript discloses that the testimony of the relatrix [as to the marriage before the 'squire'], relied upon by the hearing judge, is far from clear and convincing. On the contrary, it is vague, confused and contradictory and, as a consequence, legally insufficient to support the finding based upon it."

The auditing judge would likewise so characterize the testimony of Jane Lesnevec in the instant case. Accordingly, she equally has failed in carrying her burden of proof. Objection numbered three to the account is sustained. For the reason that it is hereby declared that Jane Lesnevec was not the wife of decedent at the time of his death, she is not entitled to the family exemption, nor to a share of distribution of the estate, and is hereby directed to restore $1,000 taken as a principal credit in her account therefor.

No other questions for adjudication were stated in the petition for adjudication, nor were any apparent to the court from the record.

The net ascertained balances for distribution are hereby awarded to William Lesnevec and Regina S.

Lesnevec, son and daughter and sole heirs at law of decedent.

No schedule of distribution need be filed.

The account is hereby confirmed, and it is ordered and decreed that Jane Lesnevec, administratrix as aforesaid, shall make and pay the distributions herein awarded forthwith upon the absolute confirmation hereof.

And now, this November 19, 1971, the within adjudication is directed to be filed and is hereby confirmed nisi.