**E. W. COSLETT & SONS, INC. and Globe Indemnity Company,**

v.

**L. S. BOWMAN, Deputy Commissioner, and Josephine Simpson, Intervening Defendant.**

Civ. A. No. 72–1320.

United States District Court, E. D. Pennsylvania.

Feb. 13, 1973.

Swartz, Campbell & Detweiler, Philadelphia, Pa., for plaintiffs.

Robert E. J. Curran, U. S. Atty., for Bowman.

Arnold Levin, Philadelphia, Pa., for Simpson, intervening defendant.

## OPINION

GORBEY, District Judge.

On June 8, 1972, the defendant, in his capacity as Deputy Commissioner, entered a compensation award under the Longshoremen's and Harbor Workers' Compensation Act (the Act) in favor of Josephine Simpson, as surviving wife of Charles Simpson, who suffered a fatal accident while in the course of his employment with the plaintiff, E. W. Coslett & Sons, Inc. The plaintiff employer, and its surety, petitioned this court to enjoin the enforcement of the award because the Deputy Commissioner had erred in his determination that Josephine Simpson was the common-law wife of Charles Simpson. Josephine Simpson was granted leave to join as intervening defendant. The plaintiff has moved for summary judgment.

This action was brought under 33 U.S.C. § 921(b) which reads in part as follows, "If not in accordance with law, a compensation order may be suspended or set aside, in whole or in part, through injunction proceedings . . . ". Our review is limited by that statute to the application of law by the defendant.

In accordance with 33 U.S.C. §§ 909(b), 902(16), the defendant found Josephine Simpson to be entitled to compensation as the surviving wife. Section 909(b) makes provision for the death benefit "if there be a surviving wife". Section 902(16) defines the term "widow" as including "only the decedent's wife living with or dependent for support upon him at the time of his death, . . . "

Under the Act, the validity of a marriage is determined by the state law of the employee's residence. Gibson v. Hughes, 192 F.Supp. 564 (S.D.N.Y. 1961). If a marriage is invalid under state law, the claimant is not entitled to compensation. Bolin v. Marshall, 76 F. 2d 668 (9th Cir. 1935), cert. denied, 296 U.S. 573, 56 S.Ct. 116, 80 L.Ed. 404

(1935). *But see* Burgess Construction Co. v. Lindley, Sup.Ct. Alaska, 1972, 504 P.2d 1023, which holds that the state's domestic relations law is not relevant to determine eligibility for benefits under state workmen's compensation laws.

■ The intervening defendant contends the defendant's finding of a common-law marriage is a fact which is not subject to review by the court. It is true that the events which give rise to the conclusion that a common-law marriage exists are facts which must be accepted, if they are supported by sufficient evidence. The existence of a common-law marriage is a question of the legal significance of the events and as such is subject to review. *Cf.* Kilby v. Folsom, 238 F.2d 699 (3d Cir. 1956); Great American Indemnity Co. v. Belair, 254 F.2d 131 (2d Cir. 1958); Bethlehem Steel Co. v. Parker, 64 F.Supp. 615 (D.C.Md.1946). However, where facts supported by substantial evidence permit alternative rational inferences to be drawn, the courts are bound by the choice of an administrative agency. O'Keeffe v. Smith, Hinchman & Grylls Assocs., Inc., 380 U.S. 359, 85 S.Ct. 1012, 13 L.Ed.2d 895 (1965).

In this case the record shows that the decedent and claimant had not participated in a ceremonial marriage when they began cohabitation in an apartment in 1940. For more than a thirty year period they had a reputation in the community as man and wife. Further, the claimant testified that before the birth of her first child in 1942, the claimant and decedent expressed an intention to effect a marriage.

■ The plaintiff argues that the Deputy Commissioner's determination that a common-law marriage was entered into is not in accordance with the law of Pennsylvania[1] as expressed in Mainor v. Midvale Co., 192 Pa.Super. 367, 162 A.2d 27 (1960). That case holds that a relationship which is meretricious at its inception is presumed illicit unless and until clear and convincing evidence is produced to show a change in circumstances.

This case differs considerably from *Mainor,* which states, "It is clear from the evidence that the commencement of this so-called common-law marriage was meretricious at its inception." The facts of *Mainor* show that in 1940 when the claimant started living with William Mainor, he had a legal wife then living. Further, the claimant knew of Mainor's wife at the inception of the relationship. In the matter before this court neither party has been shown to have a disability which could have prevented him from entering into a common-law marriage in 1940. Lack of capacity to enter into a matrimonial contract has been present in each of the cases which the plaintiff cites in support of his proposition that a relationship continues to be illicit when it is meretricious at its inception, unless there is clear and convincing evidence of a change in status.[2]

In this case there is no reason to preclude the application of the presumption under Pennsylvania law that a relationship is a common-law marriage rather than concubinage. In re: Wagner's Estate, 398 Pa. 531, 159 A.2d 495 (1960); Cupler v. Secty. HEW, 252 F.Supp. 178 (W.D.Pa.1966). A reasonable inference from the evidence could be that the parties began a common-law marriage with their cohabitation.[3]

1. Charles Simpson was a resident of the Commonwealth of Pennsylvania at the time of his death.

2. Mainor v. Midvale Co., 192 Pa.Super. 367, 162 A.2d 27 (1960); Fiedler v. National Tube Co., 161 Pa.Super. 155, 53 A.2d 821 (1947); Pierce v. Pierce, 355 Pa. 157, 49 A.2d 346 (1946).

3. The plaintiff claims the following testimony of the intervening defendant establishes that the relationship had a meretricious inception:

"Question: Excuse me, let me stop you. You got an apartment, I gather, is that right?
Answer: Yes.
Question: Where was that?
Answer: On 8th Street.
Question: At that time, had you entered into any formal marriage contract, as such? At that time before you

■■ There is an additional reason why this case is not inconsistent with *Mainor*. In *Mainor* the Workmen's Compensation Board made a determination that the presumption of a clearly meretricious relationship had *not* been overcome by sufficient evidence. From the Deputy Commissioner's determination in this matter that a common-law marriage existed, we may conclude that he believed there was sufficient evidence to overcome any such presumption. In each of these cases the administrative agency selected one of two reasonable inferences which could have been drawn from the evidence. In such situations the reviewing court may not substitute its judgment for that of the administrative agency. O'Keeffe v. Smith, et al., *supra*. The determination of administrative agencies is conclusive unless "irrational and without substantial basis."

The plaintiff also argues that defendant Deputy Commissioner's findings of fact are not supported by substantial evidence. We find this contention to be without merit.

The plaintiff's motion for summary judgment is therefore denied.

started living together? Before you started living together you didn't enter into any marriage contract, did you? Answer: No."
It is the plaintiff's contention that the last question and response is conclusive proof of the absence of mutual consent and intention between the claimant and Charles Simpson to effect a common-law marriage when they began living together. Since the question was phrased only in terms of "any marriage contract" it might have been understood by the claimant to refer to a civil or religious wedding ceremony. As such, her answer would be nothing more than an admission that the parties did not participate in a ceremonial marriage. The claimant knew. this was an important issue and would expect this to be brought out at the hearing even though counsel had stipulated to this fact. At no other point was the question asked using the term "ceremonial marriage", nor was the intervening defendant asked if she considered herself married at the time she began cohabitation, nor was it established exactly when she began to call herself Josephine Simpson.

Under further questioning, the intervening defendant stated:

"Question: Now, you said there came a time when you became pregnant? With Rose, is that correct? Answer: Yes.
Question: Did you have a conversation about marriage with Mr. Simpson? Answer: Yes, I said, I wanted to get married. He said, well—I said, I'm going back home. So he said, look here, you is my wife and I'm your husband, so that's it. We're man and wife.
Question: Did you say to him, you're my husband?
Answer: Yes.
Question: When this conversation was exchanged, did you understand that, at that point you were his wife?
Answer: Yes.
Question: And that he was your husband?
Answer: Yes.
Question: From that point on, you considered yourselves man and wife?
Answer: Man and wife.
Question: And from that point, this would be some time early in 1942, that you exchanged these vows?
Answer: Yes.
Question: Did you continue to live with Mr. Simpson until the time of his death?
Answer: Until the time of his death.
Question: And from that time on were you known to everybody as Mr. and Mrs. Simpson?
Answer: Mr. and Mrs. Simpson. I've been in the ladies union, 17 years as Mrs. Simpson."
Here the intervening defendant was questioned about her "conversation about marriage". Again there was no distinction being made between common-law and ceremonial marriage. The preceding may have been intended to be a request to participate in a ceremonial marriage with a denial that was necessary.