Mary Steen Earley, Appellant, *v.* Commonwealth of Pennsylvania, Department of Public Welfare Appellee.

18

Argued January 8, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Judd F. Crosby,* with him *Michael A. Nemec,* for appellant.

*Darius Moss,* Assistant Attorney General, with him *Louis Kwall,* Special Assistant Attorney General, for appellee.

OPINION BY JUDGE KRAMER, April 5, 1974:

This is an appeal by Mary Steen Earley (Appellant) from an order of the Department of Public Wel-

fare (Department) terminating Appellant's grant of public assistance funds.

The sole issue on appeal is whether a common law marriage exists between Appellant and William E. Earley. Appellant contends that she is not married, and the Department has concluded that she is in fact married to Mr. Earley. After the Allegheny County Board of Assistance determined that Appellant was married and not entitled to further assistance, Appellant appealed, and a hearing was held before a Department hearing officer. The order of the hearing officer was unfavorable to Appellant, and it is from that order that she appeals to this Court.

Our scope of review is found in Section 44 of the Administrative Agency Law, Act of June 4, 1945, P. L. 1388, as amended, 71 P.S. §1710.44. Provided the adjudication is in accordance with law and and the appellant's constitutional rights have not been violated, we must affirm the Department's adjudication if all of the necessary findings of fact are supported by substantial evidence. See *Parago v. Department of Public Welfare*, 6 Pa. Commonwealth Ct. 16, 29 A. 2d 923 (1972).

Appellant makes three contentions on appeal: (1) that the adjudication is erroneous because an agreement of marriage was not established and never existed; (2) that findings of fact in the adjudication do not adequately support the legal conclusion of a common law marriage; and (3) that the findings of fact are not supported by substantial evidence.

The Department argues that the "finding of fact" that a common law marriage existed is supported by substantial evidence. It is of some interest to note that the hearing officer never found that a common law marriage existed as a finding of fact, but rather so concluded as a matter of law. In reality, the validity of a common law marriage is a mixed question of law

and fact. *See Baker v. Mitchell,* 143 Pa. Superior Ct. 50, 17 A. 2d 738 (1941).

The hearing officer based his adjudication on Department regulation 3122.2(b), which provides in pertinent part: "A common-law marriage exists when the parties living together are legally free to marry (single, divorced or widowed) and are living as husband and wife by mutual agreement. A common-law marriage *may* exist if a man and woman are living together and are considered as husband and wife by the community." (Emphasis added.) While the regulation relied upon by the hearing officer may reflect the law under certain circumstances, it is not a definitive statement of the law in Pennsylvania. Unfortunately, the regulation provides no guidelines upon which a proper determination of a common law marriage could be made.

The appropriate law is aptly summarized in *Rager v. Johnstown Traction Company,* 184 Pa. Superior Ct. 474, 134 A. 2d 918 (1957):

"Marriage in Pennsylvania is a civil contract and does not require any particular form of solemnization before officers of church or state.

. . . .

"Cohabitation and reputation that the parties are married do not constitute a legal marriage—not even a common law marriage—but they are evidence from which a marriage may be found, if the circumstances are sufficiently strong and convincing to satisfy the triers of fact. . . . To constitute a valid marriage in Pennsylvania there must be a contract *per verba de praesenti,* uttered with a view to establish the relation of husband and wife. . . . The presumption of a valid common law marriage which arises as a result of cohabitation and reputation may be rebutted by proof that no common law marriage had in fact taken place. . . . Where the one who asserts a common law marriage

does not rest her case on reputation and cohabitation but attempts to prove the marriage by evidence of what occurred at the time of the alleged contract of marriage, presumption of marriage arising from reputation and cohabitation will give way to positive proof that no contract was made. . . . Evidence of cohabitation and reputation may be received and considered in corroboration of testimony that a marriage contract was in fact entered into." (Citations omitted.) 184 Pa. Superior Ct. at 477-478, 134 A. 2d at 920. Furthermore, a meretricious relationship is presumed to continue as meretricious until a valid marriage is established by clear and convincing evidence. *See Mainor v. Midvale Co.*, 192 Pa. Superior Ct. 367, 162 A. 2d 27 (1960).

Initially we should note that the record in this case indicates the possibility of a meretricious relationship at the outset of the relationship. This issue was not adequately resolved by the hearing officer. The hearing officer indicates that both Appellant and Mr. Earley were previously married to others and divorced, but does not indicate whether the present relationship began before their divorces were final. If so, a valid marriage contract would have to be shown regardless of continued cohabitation and reputation.

Secondly, both cohabitation and reputation are necessary to raise a presumption of marriage. Standing alone, neither is sufficient to raise the presumption of marriage. *See Craig's Estate*, 273 Pa. 530, 117 A. 221 (1922). In this case the hearing officer acknowledged that "the more difficult question" was whether or not Appellant and Mr. Earley were "in fact living together." Because of the "shear [sic] weight of the evidence" the hearing officer concluded that they were living together. Yet there is no evidence of actual cohabitation. No one testified that Mr. Earley lived at the same address. There is no testimony that Mr. Earley keeps

any possessions or clothes at Appellant's address. There is evidence that Mr. Earley filled out some forms indicating that Appellant was his wife. It also appears that Mr. Earley had told some people that he and Appellant were husband and wife. None of this is sufficient to prove the type of cohabitation required to raise a presumption of marriage.

In a common law marriage, it is the intent of the parties to the reputed marriage which is crucial. When *both* parties to the reputed marriage deny said marriage, the burden is on the agency to prove a marriage. In this type of case the agency must prove more than just reputation or just cohabitation as this record discloses.

By reaching the conclusion that Appellant is not married, we do not mean to condone her conduct which includes her indicating under some circumstances that she was married and denying the same under other circumstances. We do believe, however, that absent proof of marriage, it is improper to deny those benefits which are contingent upon her unmarried state.

In summary, we conclude that the hearing officer's finding of a valid common law marriage is not supported by substantial evidence. Therefore we

## ORDER

AND Now, this 5th day of April, 1974, the order of the Department of Public Welfare dated June 27, 1973 denying Mary Steen Earley public assistance is hereby reversed, and her public assistance grant is hereby reinstated.