**Gerald Estes MILBURN, Appellant–Respondent,**

v.

**Helen M. MILBURN, Appellee–Petitioner.**

No. 41A05–9708–CV–338.

Court of Appeals of Indiana.

April 23, 1998.

Audrey K. Grossman, Treacy Grossman & Sullivan, Indianapolis, for Appellant–Respondent.

Linda K. Meier, Sargent & Meier, Greenwood, for Appellee–Petitioner.

## OPINION

SULLIVAN, Judge.

Appellant, Gerald Estes Milburn (Gerald), appeals the judgment of the trial court dissolving a purported common law marriage created under Pennsylvania law.

We reverse and remand for redistribution of property.

Upon appeal, Gerald contends that he did not enter into a common law marriage with Helen Marlene Milburn (Marlene) during his residence in Pennsylvania.

In 1965, Marlene and Gerald, both Indiana residents, started living together. Marlene subsequently adopted Gerald's surname and began to wear a gold wedding band on her left ring finger. Thereafter, the relationship produced two children: Clifford in 1966 and Julie in 1968.

In November 1970, Gerald moved to Pennsylvania after his employer suspended its operations in Indiana. He testified that he leased a house for six months, and that Marlene and the children occasionally visited him. To the contrary, Marlene testified that she actually lived with Gerald during this period, which she remembered to be approximately ten months.

Marlene contends that she married Gerald on December 24, 1970, based upon the following exchange:

> "Well, it was,—we lived in like a three tiered house and the Christmas tree and everything was downstairs where we had got the kids toys ready and we just kind of was looking at each other and said 'You are my wife.' And I said 'You are my husband.' And, after that we went to bed." Record at 254.

Moreover, Marlene testified that, before the relationship ended in 1990, Gerald introduced her as his wife on "thousands" of occasions. Record at 281. She also submitted evidence that the couple filed joint federal tax returns, purchased real estate, maintained joint bank accounts, and received royalties during the course of their relationship.

Pursuant to I.C. 31–11–8–5 (Burns Code Ed.Repl.1997), common law marriages entered into after January 1, 1958 are void. Nevertheless, in the present case, the trial court resolved to give full force and effect to what it determined to be a common law marriage under the laws of Pennsylvania. However, because we conclude that the trial court committed error in concluding that Marlene demonstrated the existence of a common law marriage by clear and convincing evidence, we decline to determine whether Indiana courts recognize common law marriages effected outside of the jurisdiction.

If a relationship, claimed to be a common law marriage, was initially meretricious, the claimant must prove by clear and convincing evidence that both parties consented to enter a valid marriage and that a change in the meretricious status occurred. *In re Cummings Estate* (1984) 330 Pa.Super. 255, 479 A.2d 537, 542. This strict burden of proof is deemed compelling "given the legal significance of the marriage relationship as compared with the nature of a casual agreement to live together for the sake of companionship and shared expenses." *Id.*, 479 A.2d at 542 n. 2. A relationship will be found to be meretricious whether or not the parties openly "flout the marriage convention...." *Workmen's Compensation Appeal Bd. v. Worley* (1976) 23 Pa.Cmwlth. 357, 352 A.2d 240, 241. The term may be used to describe the relationship "of men and women living together both with and without pretense of marriage." *Id.* Therefore, that the parties held themselves out in Indiana as being married does not change the meretricious nature of the relationship as viewed under Pennsylvania law.

In reaching its decision, the trial court must review self-serving and uncorroborated testimony by the claimant "with caution and scrutiny." *Mainor v. Midvale Co.* (1960) 192 Pa.Super. 367, 162 A.2d 27, 30. Upon appeal, reversal is appropriate if the trial court committed clear error. *Canute v. Canute* (1989) 384 Pa.Super. 60, 557 A.2d 772, 775.

In the present case, we initially conclude that the relationship between Gerald and Marlene was meretricious in its inception.[1] Accordingly, Marlene bore the burden of demonstrating by clear and convincing evidence that, in Pennsylvania, the parties consented to a valid marriage and that a change in their meretricious status occurred. However, her testimony relating to the December 24, 1970 conversation was the only relevant evidence she produced. Additional evidence relating to reputation and joint possession of property was not specific to the period in which Gerald (and possibly Marlene) lived in Pennsylvania. Because unsubstantiated and self-serving statements by the claimant do not alone constitute clear and convincing evidence of marriage under Pennsylvania common law, we hold that the trial court committed error.

The judgment is reversed and the cause is remanded with instructions to vacate the dissolution decree.

FRIEDLANDER and KIRSCH, JJ., concur.

---

1. Although the trial court could consider only the events which occurred in Pennsylvania to determine whether a common law marriage was formed, applicable precedent requires that a trial court look to the status of the relationship "in its inception ..." to determine whether it was meretricious. *See Cummings Estate, supra,* 479 A.2d at 542. Because the parties do not dispute that the relationship originated in Indiana in 1964, evidence that they lived together and produced two children while in Indiana is determinative. Moreover, because Indiana does not recognize common law marriages entered into after 1958, a Pennsylvania court could not hold that this relationship, in its inception, was anything but meretricious.